**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:                                                  :        Chapter 11
                                                        :
CALPINE CORPORATION, et al.,                            :        Case No. 05-60200 (BRL)
                                                        :
                        Debtors.                        :
-------------------------------------------------------------x
MANUFACTURERS & TRADERS TRUST                           :
COMPANY, AS SUCCESSOR INDENTURE                         :
TRUSTEE FOR THE 7.75% CONVERTIBLE,                      :
NOTES,                                                  :
                                                        :
                        Appellant,                      :
                                                        :
        -against-                                       :        Civil Case No. 07-CV-7867 (JGK)
                                                        :        (Consolidation with Civil Case Nos.
CALPINE CORPORATION AND ITS                             :        07-CV-7380, 07-CV-7381 and
AFFILIATED DEBTORS AND DEBTORS                          :        07-CV-7832 pending)
IN POSSESSION, OFFICIAL COMMITTEE                       :
OF UNSECURED CREDITORS OF                               :
CALPINE CORPORATION, OFFICIAL                           :
COMMITTEE OF EQUITY SECURITY                            :
HOLDERS,                                                :
                                                        :
                        Appellees.                      :
-------------------------------------------------------------x


**APPELLANT, MANUFACTURERS AND TRADERS TRUST COMPANY'S**
**(I) OPENING BRIEF AND (II) JOINDER TO OPENING BRIEF**
**OF APPELLANTS, HOLDERS OF THE 7.75% CONVERTIBLE NOTES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .......................................................................................... 1

STATEMENT OF BASIS OF APPELLATE JURISDICTION .................................... 1

STATEMENT OF ISSUES PRESENTED .............................................................. 2

APPLICABLE STANDARD OF APPELLATE REVIEW ......................................... 3

STATEMENT OF THE CASE ............................................................................ 4

STATEMENT OF FACTS AND PROCEDURAL POSTURE .................................... 6

      I.      Course of Proceedings ........................................................... 6

            A.      Chapter 11 Cases ......................................................... 6

            B.      Limited Claim Objection ................................................ 8

      III.    Bankruptcy Court Opinion and Order: ...................................... 9

      III.    Brief Description of the 7.75% Convertible Notes .................... 12

ARGUMENT ............................................................................................... 12

      I.      The Bankruptcy Court Erred As A Matter Of Law When The
             Court Entered The Order ........................................................ 12

      II.     The Proposed Form Of Order Submitted By The Debtors And
             Entered By The Bankruptcy Court Did Not Accurately Reflect The
             Ruling Of The Bankruptcy Court ........................................... 13

            A.      The Indenture Trustee Was Denied Notice And An
                    Opportunity To Be Heard Before The Entire Amount Of
                    The Proof Of Claim Was Determined By The Bankruptcy
                    Court ...................................................................... 13

            B.      The Order Should Be Vacated Because The Record Before
                    the Bankruptcy Court Only Supported Disallowance Of
                    The Conversion Right Claim .......................................... 18

CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

Ameritrust Co. v. Integrated Resources, 157 B.R. 66, 72 (S.D.N.Y. 1993) ................................. 4

In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999) ........................................... 4

In re Bennett Funding Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998) ......................................... 4

Blaise v. Wolinsky, 219 B.R. 946, 948 (2d Cir. B.A.P. 1998) .................................................. 18

Cabral v. Shamban (in Re Cabral), 285 B.R. 563, 575-576 (1st Cir. B.A.P. 2002) .................... 13

C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.),
     113 F.3d 1304, 1312 (2d Cir. 1997) ............................................................................... 18

In re Enron Corp., 364 B.R. 482, 485 (S.D.N.Y. 2007) ............................................. 3

Grannis v. Ordean, 234 U.S. 385 (1914) .................................................................... 14

Itel Containers International Corp. v. Atlanttrafik Express Service Ltd.,
     909 F.2d 698, 704 (2d Cir. 1990) .................................................................................. 18

Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.),
     279 F.3d 148, 153 (2d Cir. 2002) ................................................................................. 15

Kelley v. Everglades Drainage District, 319 U.S. 415, 422 (1943) ......................................... 18

Krieger v. Gold Bond Building Products, 863 F.2d 1091, 1097 (2d Cir. 1988) ......................... 18

Lucente v. IBM Corp., 310 F.3d 243, 261 (2d Cir. 2002) ........................................... 4

Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316 (1940) ...................................... 18

Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999) ................................. 18-19

McDonnell v. American Leduc Petroleums, Ltd., 456 F.2d 1170, 1177 (2d Cir. 1972) ........ 15-17

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ............................... 14

Ratliff v. Governor's Highway Safety Program, 791 F.2d 394, 400 (5th Cir. 1986) .................. 18

South St. Seaport Ltd. Pshp. v. Burger Boys (In re Burger Boys),
     94 F.3d 755 (2d Cir. 1996) ............................................................................................ 14

Taylor v. Taylor (In re Taylor), 233 B.R. 639 (S.D.N.Y. 1999) ................................................ 18

U.S. v. Vulpis, 961 F.2d 368, 371 (2d Cir. 1992) ...................................................................... 18

DB02:6224766.1                                                                        065102.1003

<u>Wright v. Union Central Life Ins. Co.</u>, 304 U.S. 502, 518 (1938) ......................................... 13-14

## CONSTITUTION, STATUTES AND RULES

U.S. Const. amend. V and XIV § 1 ............................................................................ 13

11 U.S.C. § 102(1) ................................................................................................... 13

11 U.S.C. § 502(a)-(b) ............................................................................................. 13

28 U.S.C. § 158(a)(1) ................................................................................................ 1

Fed. R. Civ. P. 52(a) ............................................................................................... 18

Fed. R. Bankr. P. 8001 .............................................................................................. 1

Fed. R. Bankr. P. 9014(c) ........................................................................................ 18

DB02:6224766.1     065102.1003

**INTRODUCTION**

Appellant, Manufacturers & Traders Trust Company ("M&T" or the "Indenture Trustee"), in its capacity as (i) successor indenture trustee on behalf of the holders of the 7.75% Contingent Convertible Notes Due 2015 (the "7.75% Convertible Notes"; and the holders of the 7.75% Convertible Notes being the "7.75% Convertible Noteholders") issued by Calpine Corporation ("Calpine") pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust Company ("WTC" or the "Original Trustee"), as trustee (the "7.75% Base Indenture"),[1] as supplemented by the Third Supplemental Indenture, dated as of June 23, 2005 (the "7.75% Supplemental Indenture,"[2] and together with the Base Indenture, the "7.75% Indenture"), hereby submit this opening brief in support of its appeal taken from the Order Granting Debtors' Limited Objection to Convertible Noteholder Claim Nos. 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300. (Docket No. 5595; the "Order")[3] entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on August 10, 2007.

**STATEMENT OF BASIS OF APPELLATE JURISDICTION**

Pursuant to 28 U.S.C. § 158(a)(1) and Rule 8001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this Court has jurisdiction to hear this appeal. The Order constitutes a final appealable order pursuant to 28 U.S.C. § 158(a)(1).

---

[1]     A copy of the 7.75% Base Indenture is included in the Appendix at Exhibit A.

[2]     A copy of the 7.75% Supplemental Indenture is included in the Appendix at Exhibit B.

[3]     A copy of the Order is included in the Appendix at Exhibit C.

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred as a matter of law when it entered the Order.

2.      Whether the Bankruptcy Court erred as a matter of law in determining that the Indenture Trustee's timely-filed proof of claim (Claim No. 2404; the "Proof of Claim")[4] on account of the 7.75% Convertible Notes, which included a liquidated claim for principal and interest and a claim for unliquidated amounts that may be due or become due under the 7.75% Convertible Notes and the 7.75% Indenture, and which attached a copy of the Indenture, did not include a claim (the "Conversion Right Claim") for breach of the conversion right contained in the Indenture (the "Conversion Right").

3.      Whether the Bankruptcy Court erred as a matter of law in determining that the supplement to the proof of claim filed by the Indenture Trustee (the "Supplemental Proof of Claim"),[5] which merely clarified that the original Proof of Claim for unliquidated amounts included a claim for breach of the Conversion Right, is not an amendment to the Proof of Claim and did not relate back to the Proof of Claim and therefore should be time barred.

4.      Whether the Bankruptcy Court abused its discretion in determining that allowance of the Indenture Trustee's claim for damages arising from the Debtors' abrogation of the Conversion Right contained in the 7.75% Indenture should be expunged on equitable grounds.

---

[4]      A copy of the Proof of Claim, without exhibits, is included in the Appendix at Exhibit D.

[5]      A copy of the Supplemental Proof of Claim, without exhibits, is included in the Appendix at Exhibit E.

5.      Whether the Bankruptcy Court erred as a matter of law in holding that the Debtors are not liable to the 7.75% Convertible Noteholders for eliminating the Conversion Right in breach of the Indenture and disallowing the Conversion Right Claim.

6.      Whether the Bankruptcy Court erred as a matter of law in determining that the claim for damages arising from the Debtors' abrogation of the Conversion Right contained in the Indenture would be subject to subordination pursuant to Section 510(b) of the Bankruptcy Code.

7.      Whether the Bankruptcy Court erred as a matter of law by improperly adjudicating issues not before it and valuing the Proof of Claim as the amount of outstanding principal, plus accrued interest at a rate to be determined by the Bankruptcy Court at the end of the chapter 11 cases and reasonable prepetition indenture trustee fees as provided under the 7.75% Indenture, and ordering that the Indenture Trustee, for its benefit and the benefit of the 7.75% Convertible Noteholders, was not entitled to claims on account of any breaches of their Indenture (other than breach of the Conversion Right), "makewhole" or other damages, which claims were neither disputed in the Debtors' Limited Objection to Convertible Noteholder Claim Nos. 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300 (Docket No. 5206; the "Limited Objection")[6] nor briefed or argued by the parties.

## APPLICABLE STANDARD OF APPELLATE REVIEW

On appeal, a federal district court reviewing an order of the bankruptcy court accepts its factual findings, unless they are clearly erroneous.  Fed. R. Bankr. P. 8013. Conclusions of law are reviewed *de novo*.  In re Enron Corp., 364 B.R. 482, 485 (S.D.N.Y.

---

[6]      A copy of the Limited Objection, without exhibits, is included in the Appendix as Exhibit F.

2007) (citing In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999); In re Bennett Funding

Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998). The determination of the proper measure of

damages arising from breach of a contract is a mixed question of law and fact, which is also

subject to *de novo* review. See Lucente v. IBM Corp., 310 F.3d 243, 261 (2d Cir. 2002). The

decision to grant or deny an amendment to a timely filed proof of claim rests within the sound

discretion of the bankruptcy judge, and upon appellate review, is subject to an abuse of

discretion standard. See Ameritrust Co. v. Integrated Resources, 157 B.R. 66, 72 (S.D.N.Y.

1993).

## STATEMENT OF THE CASE

The Indenture Trustee respectfully submits that the Bankruptcy Court erred in

sustaining the Limited Objection and denying the Indenture Trustee, for the benefit of the 7.75%

Convertible Noteholders, the full benefit of the bargain embodied in the 7.75% Indenture and

related documents.

As more fully set forth in the Opening Brief of Brencourt Credit Opportunities

Master, Ltd., Brencourt Multi-Strategy Enhanced Dedicated Fund, LP, Dillon Read U.S. Finance

L.P., Dillon Read Financial Products Trading Ltd., Linden Capital L.P., and Ore Hill Hub Fund,

Ltd., upon information and belief, each a holder of certain of the 7.75% Convertible Notes

(collectively, the "Appellant Noteholders" and their brief referred to as the "Appellant

Noteholders' Brief"), the Debtors project that pre-petition equityholders are likely to receive a

significant distribution under the proposed plan of reorganization. Under these circumstances,

rare though they may be, the law is clear -- creditors of a solvent debtor must receive the full

benefit of their bargain, including the full measure of damages arising under applicable law from

any breach of the relevant promise. As a result, the Indenture Trustee joins in the Appellant

4

Noteholders' Brief and incorporates herein all of arguments advanced therein by reference, including that

(i) the Debtors and the Bankruptcy Court failed to properly apply the plain meaning of the 7.75% Indenture, which clearly provides for the survival of the Conversion Right post-bankruptcy;

(ii)  Federal law, state law and the law of this case require that the Indenture Trustee, for the benefit of the 7.75% Convertible Noteholders, is entitled to the Conversion Right Claim as a result of the Debtors' proposed redemption of the 7.75% Convertible Notes during a clearly defined "no-call" period as set forth in the provisions of the Indenture;

(iii) The Supplement was not a late-filed proof of claim that should be expunged because the timely Proof of Claim originally filed by the Indenture Trustee expressly asserted claims in unliquidated amounts.  The Supplement did nothing more than clarify the nature of the unliquidated amounts that were previously asserted in the Proof of Claim (and expressly says so in the attachment to the Supplement).  The Supplement relates to the same 7.75% Indenture, the same transaction and the same set of facts as the Proof of Claim; and

(iv) The Conversion Right Claim should not be subordinated under section 510(b) of the Bankruptcy Code because the claim relates to a valid and enforceable debt instrument.  Even if the Conversion Right Claim should be subordinated, the Bankruptcy Code is clear that such damage claims would not be subordinate to equity, but would be senior thereto.

In addition, the order submitted by the Debtors and entered by the Bankruptcy Court did not accurately reflect the ruling of the Bankruptcy Court sustaining the Limited Objection on August 8, 2007.  At the hearing on the Limited Objection, the Bankruptcy Court disallowed the Conversion Right Claim.  The Order provides for relief well beyond the Bankruptcy Court's ruling and the record before the Bankruptcy Court and improperly attempts to extinguish claims not addressed in the parties pleadings or argued at the hearing.  As a result, (i) entry of the Order deprived the Indenture Trustee of due process and notice and an opportunity to be heard, and (ii) was not supported by the record.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

I.    **Course of Proceedings**

A.    **Chapter 11 Cases**

On December 20, 2005 (the "Petition Date") and thereafter, Calpine and various of its direct and indirect United States affiliates (collectively with Calpine, the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with the Bankruptcy Court

By order dated April 26, 2006, the Bankruptcy Court established August 1, 2006 as the bar date for filing proofs of claim (the "Bar Date").

On July 19, 2006, the Original Trustee filed the Proof of Claim asserting claims for (a) principal and interest and (b) other unliquidated amounts arising under the 7.75% Indenture.  On or about April 23, 2007, the Indenture Trustee filed the Supplement.

Upon information and belief, between March and July of 2007, the Appellant Noteholders engaged in a number of meetings and negotiations with the Debtors regarding the treatment of the 7.75% Convertible Notes, specifically including the Conversion Right.

On June 8, 2007, the Debtors filed their motion (the "Makewhole Objection")[7] seeking the entry of an order allowing the Debtors' limited objection to certain claims relating to Calpine's second lien debt and unsecured bonds, and determining the value of such claims pursuant to Bankruptcy Rule 3012.  In footnote 3 to the Makewhole Objection, the Debtors expressly stated that the Proof of Claim filed in connection with the 7.75% Convertible Notes (along with the proofs of claim filed on behalf of other convertible notes issued by Calpine) was

---

[7]    A copy of the Makewhole Objection, without exhibits, is included in the Appendix at Exhibit G.

not the subject of the Makewhole Objection, though the Debtors reserved their rights to object to such claims at a later date.  Makewhole Objection, App. Ex. G., at 5, n.3.

On June 20, 2007, the Debtors filed their Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 5016; the "Disclosure Statement") and the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 5015; the "Plan").

On July 2, 2007, the Debtors filed a motion to approve, *inter alia*, the Disclosure Statement a procedures for soliciting votes to accept or reject the Plan (Docket No. 5162; the "Solicitation Procedures Motion").

On July 26, 2007, the Debtors filed a Form 8-K[8] containing a press release stating that certain parties had contacted the Debtors about potentially sponsoring an alternative plan of reorganization guaranteeing distributions to the Debtors' stakeholders.  Upon information and belief, the Debtors, assisted by their financial advisor, began to investigate the possibility of an alternative plan structure.  As a result, the Debtors adjourned a hearing on the Disclosure Statement to September 11, 2007.

On August 27, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 5698; the "Amended Plan") and their First Amended Disclosure Statement (Docket No. 5702; the "Amended Disclosure Statement").  A hearing to consider approval of the Amended Disclosure Statement was scheduled to take place before the Bankruptcy Court on September 11, 2007.

---

[8]        A copy of the Form 8K is included in the Appendix at Exhibit H.

7

On August 29, 2007, the Debtors a notice (Docket No. 5728)[9] adjourning the September 11, 2007, hearing date on the Amended Disclosure Statement and Solicitation Procedures Motion until September 25, 2007, and resetting the objection deadline to September 14, 2007, to allow additional time to consider the possibility of adding a rights offering to the Amended Plan under which current Calpine shareholders would have rights to purchase new Calpine common stock issued under the Amended Plan to fund a full or partial cash payout of the Debtors' unsecured creditors.

B.    **Limited Claim Objection:**

On July 6, 2007, the Debtors' filed the Limited Objection, pursuant to which the Debtors sought to expunge only the Conversion Right Claim filed by the Indenture Trustee (and similar claims filed by another indenture trustee).

On July 27, 2007, the 7.75% Convertible Noteholders filed a response to the Limited Objection and the Indenture Trustee joined in this response (Docket Nos. 5428 and 5429, respectively).[10]  Certain holders of the 6% Contingent Convertible Notes Due 2014 (such holders the "6% Convertible Noteholders;" such notes, the "6% Convertible Notes") and the indenture trustee for the 6% Convertible Notes also filed a response to the Limited Objection (Docket Nos. 5427 and 5449, respectively).[11]  The Official Committee of Unsecured Creditors

---

[9]       A copy of the notice is included in the Appendix at Exhibit I.

[10]      Copies of the responses of the 7.75% Convertible Noteholders and the Indenture Trustee, without exhibits, are included in the Appendix at Exhibits J and K, respectfully.

[11]      Copies of the responses of the 6% Convertible Noteholders and the indenture trustee for the 6% Convertible Notes, without exhibits, are included in the Appendix at Exhibits L and M, respectfully.

(the "Creditors Committee") filed a statement in support of the Debtors' Limited Objection (Docket No. 5431).[12]

Thereafter, each of the Debtors, the Creditors Committee and the Official Committee of Equity Security Holders (the "Equity Committee") filed a reply (Docket Nos. 5540, 5538 and 5541, respectively).[13]

## II.    Bankruptcy Court Opinion and Order:

On August 8, 2007, the Bankruptcy Court conducted a non-evidentiary hearing (the "Hearing") to consider the Limited Objection.  At the conclusion of oral argument, the Bankruptcy Court issued an oral opinion (the "Transcript Opinion")[14] granting the Debtors' Limited Objection, in which it held, in substance, as follows.

The "new claims"— expressly defined by the Bankruptcy Court as limited to the Conversion Right Claim — were not amendments that relate back to the Proof of Claim. Transcript Opinion, App. Ex. R,  at 96:6-9, 97: 4-6.  Specifically, the Bankruptcy Court held that the "new claims" do not correct a form defect in the original claims, do not describe the original claims with more particularity and do not plead a new theory of recovery on the facts set forth in the original claims.  Id. at 98: 1-13.  Instead, the Bankruptcy Court held that the "initial claims" did not make any meaningful reference to the Conversion Right Claim, which the Bankruptcy Court misconstrued as asserting a "double recovery."  Id. at 98: 14-15.

---

[12]     A copy of the statement in support of the Limited Objection, without exhibits, is included in the Appendix at Exhibit N.

[13]     Copies of the replies are included in the Appendix as Exhibits O, P and Q, respectively.

[14]     Excerpts of the complete transcript of Hearing, which pertain only the Bankruptcy Court's ruling, are included in the Appendix as Exhibit R.  Excerpts of the complete transcript of the Hearing, which pertain to entire portion of the Hearing related to the Limited Objection, including the Transcript Opinion, are included in the Appendix as Exhibit S.

The delay in filing the Supplement was not excusable, and disruption of the judicial administration of the case could occur because the indenture trustees filed the "new claims" during the plan formulation process, and the "timing of the 'new claims' forces the Debtors to deal with them when they should be focusing on the approval of the disclosure statement and confirmation of the plan." Id. at 99: 7-17.  In addition, to extent the "new claims" remain unresolved and unliquidated as of confirmation, the reorganized Debtors "may have to maintain large reserves thereby delaying distributions to other stakeholders" who have timely filed proofs of claim and interests.  Id. at 99: 2-25-100: 1.

The Indenture Trustee, for the benefit of the 7.75% Convertible Noteholders, is not entitled to the Conversion Right Claim.  Id. at 101: 2-3.  The 7.75% Convertible Notes represent "an indivisible unit" such that the "issuer has but one obligation to meet either redemption or conversion, it can never be required to do both" and "[b]y repaying the noteholders principal accrued interest in full the debtors are rendering the alternative performance as provided in the indenture." Id. at 100: 19-21.  Upon Calpine's bankruptcy filing, the 7.75% Convertible Notes were automatically accelerated and became "immediately due and payable" and the right to convert no longer existed.  Id. at 94:25-95:1-10.  Since the "conversion rights were not exercisable as of the petition date when the notes were accelerated and matured . . . the put right itself had not yet become exercisable." Id.

Even if the "new claims" were cognizable, "they would be susceptible to subordination pursuant to Section 510(b) of the bankruptcy code as claims arising from the purchase or sale of a security of the debtors." Id. at 101: 10-15.

At the conclusion of its Opinion, the Bankruptcy Court stated: "Accordingly, the debtors' limited objection to the *new claims* is granted.  Settle an order consistent with this

decision." Id. at 102: 8-9 (emphasis added).  After the Debtors circulated a form of proposed order, attorneys for each of the Appellant Noteholders and the 6% Convertible Noteholders submitted a joint letter, dated August 10, 2007, to chambers alerting the Bankruptcy Court that the form of order submitted by the Debtors granted relief well beyond the scope of the matters addressed at the Hearing and determined in the Bankruptcy Court's Transcript Opinion.  In addition, these parties submitted an alternate proposed form of order (the "Alternate Order")[15] consistent with the Bankruptcy Court's Transcript Opinion, which the Indenture Trustee reviewed and agreed with.

Nevertheless, on August 10, 2007, the Bankruptcy Court entered the form of order proposed by the Debtors, which provides that

> the value of the New Claims is determined as the amount of outstanding principal, plus accrued interest at a rate to be determined by the Court at the end of the Chapter 11 Cases and reasonable prepetition indenture trustee fees as provided under the Indentures (collectively, the "Repayment Amounts"); *provided, however*, that nothing herein shall conflict with any treatment of indenture trustee fees under a plan of reorganization for the Debtors.  For the purposes of clarity, the Repayment Amounts shall not include any actual or potential claims, premiums or penalties related to any contract defaults or damages..

Order, App. Ex. c, ¶3 (emphasis added).

On August 14, 2007, the 6% Convertible Noteholders and the Appellant Noteholders each filed a Notice of Appeal (Docket Nos. 5614 and 5616).  On August 15, 2007, HSBC Bank USA, N.A., as Indenture Trustee for the 6% Convertible Notes due 2014 and the 4.75% Contingent Convertible Notes Due 2023, filed a Notice of Appeal  (Docket No. 5637).  On August 16, 2007, the Indenture Trustee filed a Notice of Appeal (Docket No. 5643).

---

[15]    A copy of Alternate Order, along with the August 10, 2007, cover letter submitting such order, is included in the Appendix as Exhibit T.

### III.    Brief Description of the 7.75% Convertible Notes

As more fully set forth in the Appellant Noteholders' Brief, on June 23, 2005, Calpine issued $650 million principal amount of the 7.75% Convertible Notes pursuant to the 7.75% Indenture.  The scheduled maturity date for the 7.75% Convertible Notes is June 1, 2015.  The 7.75% Indenture provides that the 7.75% Notes are convertible, at the option of the 7.75% Noteholders, into cash and shares of common stock at any time following May 31, 2014, or prior to such time upon the satisfaction of certain conditions precedent.  See 7.75% Supplemental Indenture, App. Ex. B, § 10.01(a).

The Indenture Trustee joins in the remainder of the facts set forth in the Appellant Noteholders' Brief and incorporates in this brief by reference the facts set forth therein.

## ARGUMENT

### I.    The Bankruptcy Court Erred As A Matter Of Law When The Bankruptcy Court Entered The Order

With respect to issues numbered one through six in the Statement of Issues on Appeal (see, supra, at __ - __), the Indenture Trustee joins in the arguments advanced by the Appellant Noteholders in their brief and incorporates in this brief by reference the arguments advanced therein.

### II.    The Proposed Form Of Order Submitted By The Debtors And Entered By The Bankruptcy Court Did Not Accurately Reflect The Ruling Of The Bankruptcy Court

Should this Court determine that the Indenture Trustee, for the benefit of the 7.75% Convertible Noteholders, is not entitled to the Conversion Right Claim, this Court must nonetheless vacate the Order and remand this matter back to the Bankruptcy Court.

A.     **The Indenture Trustee Was Denied Notice And An
       Opportunity To Be Heard Before The Entire Amount Of The
       Proof Of Claim Was Determined By The Bankruptcy Court**

Section 502 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) A claim . . . proof of which is filed under section 502 of [the Bankruptcy Code] is deemed allowed, unless a party in interest, including [the debtor], objects.

(b) [i]f such objection to a claim is made, the court, <u>after notice and a hearing</u>, shall determine the amount of such claim . .. and shall allow such claim in such amount . . ..

11 U.S.C. § 502(a)-(b) (emphasis added).  "After notice and a hearing" is defined in section 102 of the Bankruptcy Code, which provides, in pertinent part, as follows:

In [the Bankruptcy Code]—

(1) "after notice and a hearing" . . .

(A) means after such notice as is appropriate in the particular circumstances and such opportunity for a hearing as is appropriate in the particular circumstances, but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

11 U.S.C. § 102(1).  The concept of notice and a hearing under section 102(1) of the Bankruptcy Code "is a flexible one" and will vary depending on the circumstances.  <u>Cabral v. Shamban (in Re Cabral)</u>, 285 B.R. 563, 575-576 (1st Cir. B.A.P. 2002).

In addition to these statutory notice requirements, a party objecting to a proof of claim must comply with constitutional due process requirements.  The due process clauses contained in the Fifth and Fourteenth Amendments to the United States Constitution apply in all bankruptcy cases and guarantee fair process.  <u>See</u> U.S. CONST. amend. V and XIV § 1; <u>Wright</u>

v. Union Central Life Ins. Co., 304 U.S. 502, 518 (1938) (holding that "if Congress is acting

within its bankruptcy power, it may authorize the bankruptcy court to affect . . . property rights,

provided the limitations of the due process clause are observed.").  To satisfy these due process

requirements, "the notice [of the proceedings] must be of such nature as reasonably to convey the

required information . . .."  See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306,

314 (1950) (citing Grannis v. Ordean, 234 U.S. 385 (1914)); see generally South St. Seaport Ltd.

Pshp. v. Burger Boys (In re Burger Boys), 94 F.3d 755 (2d Cir. 1996) (holding that the lower

court committed reversible error when it denied the opposing party the opportunity to respond to

a motion to assume a lease).  By submitting the Order to the Bankruptcy Court, the Debtors

deprived the Indenture Trustee of due process, and, as a result, the Bankruptcy Court erred when

it entered the Order.

        In the Proof of Claim, the Original Trustee included claims for principal,

liquidated but unpaid interest, unliquidated interest, and other unliquidated amounts, including,

but not limited to, "interest, charges, penalties, premiums, and advances."  Proof of Claim

(Add.), App. Ex. D, at 2 .  In the Supplement, the Indenture Trustee clarified that these other

unliquidated amounts included, among other amounts, claims for breach of the Conversion

Right.  Supplement, App. Ex. E, ¶4.  Other than the claims associated with breach of the

Conversion Right, the Debtors failed to comply with the Supreme Court's mandate in Mullane

because they did not provide the Indenture Trustee with adequate notice of the nature of the

proceedings sufficient to convey the full extent of the relief sought by the Limited Objection.

See Limited Objection, App. Ex. F, at 1, 13-14 (noting in only two places in the body of the

objection (a total of two sentences) that the debtors were seeking to limit the Proof of Claim and

the Supplement to principal and interest).

        

The Indenture Trustee is not asserting that the Debtors generally complied with section 102 of the Bankruptcy Code and the U.S. Constitution when they filed, served and noticed the Limited Objection. Rather, the Indenture Trustee contends that the Debtors violated section 102 of the Bankruptcy Code and the U.S. Constitution by presenting a form of order excessively broad in that it covers issues other than and beyond those addressed in the Limited Objection and all of the pleadings related thereto and argued before the Bankruptcy Court. This resulted in depriving the Indenture Trustee of an adequate opportunity to defend against specific relief sought and ordered by the Bankruptcy Court.

The Second Circuit Court of Appeals has observed that depriving a litigant of an adequate chance to defend against specific arguments that formed the basis for a lower court's opinion is reversible error. See McDonnell v. American Leduc Petroleums, Ltd., 456 F.2d 1170, 1177 (2d Cir. 1972) (holding that the argument that the lower court's opinion should be vacated had merit because the procedure utilized by the lower court to render its decision may have been improper). C.f. Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.), 279 F.3d 148, 153 (2d Cir. 2002) (holding that "notice and an opportunity to be heard" (a standard similar to the standard found in section 102(1)) requires that the responding party receive "adequate notice of," and "an adequate opportunity to address," the basis upon which sanctions are ultimately imposed; issuing sanctions under 9011 based on a theory not addressed by the parties was reversible error).

In McDonnell, the lower court presided over a lengthy trial at the conclusion of which the court allowed the trustee to amend its pleadings to conform to the proof. Thereafter, the trustee asserted an altogether new theory of liability and the lower court based its decision upon this new theory. However, many defendants asserted that they were not aware of the new

theory until after the trustee amended its pleadings and the trial court issued its opinion.  As a result, the defendants asserted that they were deprived of an adequate opportunity to respond to this new theory.  McDonnell, 456 F.2d at 1177.  The Court of Appeals determined that this argument had merit, but also determined that it was unnecessary to decide the issue because the court was remanding the proceeding to allow the defendants to address the new theories.  See id. (holding that "[w]e need not decide whether the claim is correct, although it is clearly not frivolous.").

The underlying problem at issue in McDonnell is analogous to the errors committed by the Bankruptcy Court in the instant case.  To illustrate, the Debtors filed the Limited Objection and, on page 1 thereof, requested that the Bankruptcy Court enter an order in substantially the form attached to the Limited Objection.  The Indenture Trustee does not dispute that the proposed form of order states that the Proof of Claim and the Supplement will be limited to principal, interest and indenture trustee fees.  Further, the Indenture Trustee does not dispute that at one other place in the Limited Objection the Debtors request that Bankruptcy Court determine that the amount of the Proof of Claim and the Supplement is limited to principal and interest.  See Limited Objection, App. Ex F, at 1, 13-14, and Ex. A (proposed form of order).[16]

The error arises from the fact that the Debtors' requested relief, i.e., limiting the Proof of Claim and the Supplement to principal, interest and indenture trustee fees, was not otherwise addressed in the thirty-four page Limited Objection and proposed form of order (365

---

[16]    Beginning on page 13 and carrying over to page 14, for the first time, the Debtors state in the body of the Limited Objection their requested relief.  On these pages, the Debtors state that "[t]he Debtors respectfully request that the Court, pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, grant the [Limited] Objection and disallow the Convertible Noteholders' claims to the extent they seek amounts beyond Principal and Interest."  Limited Objection, App. Ex. F, at 13-14.

16

pages, inclusive of all exhibits).  Moreover, this form of relief was not addressed in the Debtors'
26-page reply brief.  Finally, these issues were not addressed at oral argument.  To be clear, the
Debtors <u>did not</u> address the Indenture Trustee's entitlement to "charges, penalties, premiums,
and advances", all which were <u>expressly</u> included in the Original Proof of Claim under other
unliquidated amounts.  <u>See</u> Proof of Claim (Add.), App. Ex. D, at 2.

   Instead, in the Debtors' pleadings, the Debtors focused exclusively on and
addressed only disallowance of the "New Claims" – the claims for breach of the Conversion
Right.  Similarly, the Official Committee of Unsecured Creditors and the Official Committee of
Equity Security Holders also filed substantial pleadings in support of the Limited Objection and,
consistent with the Debtors, focused exclusively on and addressed only the "New Claims."  In
light of all of the pleadings lodged by the Appellees, the Appellant Noteholders and the
Indenture Trustee focused their pleadings on the claims for breach of the Conversion Right only.
Not surprisingly, and consistent with all of the filed pleadings, oral argument focused <u>exclusively</u>
on the claims for breach of the Conversion Right.

   As a result, the Debtors only provided notice of their intent to seek disallowance
of claims for the breach of Conversion Right, notwithstanding two discrete reference in the
Limited Objection to the contrary.  Yet, all bases for recovery, other than principal, interest, and
indenture trustee fees and expenses, asserted in the Proof of Claim were disallowed under the
Debtors' proposed form of order, which was entered by the Bankruptcy Court.

   Like the defendants in <u>McDonnell</u>, the Indenture Trustee first learned about the
full extent of the relief requested after oral argument when the Debtors circulated a proposed
form of order for comment.  Prior to circulation of that form of order, no party -  not even the
Debtors, who filed the Limited Objection - focused on the breadth of the relief requested.

17

Instead, all parties focused on claims for breach of the Conversion Right, the only issues for

which the Debtors provided adequate notice and opportunity to be heard.

Accordingly, the Indenture Trustee was deprived of due process and notice under

section 102 of the Bankruptcy Code, and the Bankruptcy Court's Order should be vacated.

> **B.     The Order Should Be Vacated Because The Record Before the
> Bankruptcy Court Only Supported Disallowance Of The
> Conversion Right Claim**

All findings of fact and conclusions of law must be supported by the record.  See

Taylor v. Taylor (In re Taylor), 233 B.R. 639 (S.D.N.Y. 1999) (holding that the record before the

bankruptcy court was insufficient to grant the relief requested, and accordingly, the bankruptcy

court's order was reversed).  A bankruptcy court may draw inferences from the record, but only

where "the record is sufficiently well developed . . .."  C-TC 9th Ave. Pshp. v. Norton Co. (In re

C-TC 9th Ave. Pshp.), 113 F.3d 1304, 1312 (2d Cir. 1997).  The Second Circuit Court of

Appeals has described the necessity of an adequate record as follows:

> A principal purpose of the requirement for specific factual findings is to inform
> the appellate court of the basis of the decision and to permit effective appellate
> review. See, e.g., Kelley v. Everglades Drainage District, 319 U.S. 415, 422, 87
> L. Ed. 1485, 63 S. Ct. 1141 (1943); Mayo v. Lakeland Highlands Canning Co.,
> 309 U.S. 310, 316, (1940); Itel Containers International Corp. v. Atlanttrafik
> Express Service Ltd., 909 F.2d 698, 704 (2d Cir. 1990); Blaise v. Wolinsky, 219
> B.R. 946, 948 (2d Cir. B.A.P. 1998). The findings of fact and conclusions of law
> need not be written but may instead be stated orally and recorded in open court.
> See, e.g., Fed. R. Civ. P. 52(a); [Fed. R. Bankr. P. 9014(c) (making Fed. R. Civ.
> P. 52 applicable to contested matters, including claim objections)]; U.S. v. Vulpis,
> 961 F.2d 368, 371 (2d Cir. 1992). And they need not include "'punctilious detail
> []or slavish tracing of the claims issue by issue and witness by witness.'"  Krieger
> v. Gold Bond Building Products, 863 F.2d 1091, 1097 (2d Cir. 1988) (quoting
> Ratliff v. Governor's Highway Safety Program, 791 F.2d 394, 400 (5th Cir.
> 1986)).

Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999).  However, at a minimum,

"the findings and conclusions must . . . at least be sufficient to permit meaningful appellate

18

review; and where such findings and conclusions are lacking, [the appellate court] may vacate and remand." Id.

As set forth above, it is clear from the record, including all of the pleadings and the Transcript, that the relief granted by the Order (other than with respect to the Conversion Right) is not supported by findings of fact or conclusions of law. At the hearing on the Debtors' Limited Objection, the Bankruptcy Court disallowed "new claims" - claims asserted for breach of the Conversion Right. Transcript Opinion, App. Ex. R, at 101: 25; 102: 1-5. The order submitted by the Debtors and entered by the Bankruptcy Court provides for relief well beyond the Bankruptcy Court's ruling. Specifically, the Order, in relevant part, improperly extinguished any and all claims of the Noteholders in excess of outstanding principal, accrued interest, and reasonable prepetition indenture trustee fees as provided under the indentures. Order, App. Ex. C, ¶3.

However, it is abundantly clear from the Limited Objection, the pleadings related thereto, and the Transcript that the parties addressed only the claims asserted on account of the Conversion Right and the Bankruptcy Court properly focused on only the claims asserted on account of the Conversion Right. Indeed, the Bankruptcy Court ruled that "on March, April and May of 2007 the indenture[] trustees for the convertible notes filed 'supplemental' proofs of claims seeking in addition to repayment of outstanding principal and accrued interest damages for 'any breach' of the conversion rights, collectively the new claims." Transcript, App. Ex. R, at 96: 4-9 (emphasis added). The Bankruptcy Court went on to state that these "new claims" were disallowed for various reasons and, even if they were not disallowed, the "new claims" were subordinated. At the end of the ruling, the Bankruptcy Court directed that the Debtors "settle an order consistent with this decision ." Transcript, App. Ex. R, at 102: 8-9.

Through submission of the Order, the Debtors (i) failed to comply with the Bankruptcy Court's direction, (ii) broadened their form of order beyond those issues brought before the Bankruptcy Court, and (iii) extinguished all of Indenture Trustee's claims in excess of principal and interest (plus indenture trustee fees and expenses).  By entering the Order, the Bankruptcy Court ruled on issues outside the scope of the record and without making specific findings of fact or conclusions of law.

Accordingly, Bankruptcy Court erred as a matter of law and the Order should be vacated.

20

## CONCLUSION

In light of the foregoing, the Indenture Trustee respectfully submits that the

Bankruptcy Court's ruling and entry of the Order sustaining the Limited Objection were

incorrect as a matter of law.  Accordingly, the Indenture Trustee respectfully requests that this

Court reverse the Bankruptcy Court, vacate the Order, and remand this matter to the Bankruptcy

Court for further proceedings.

Dated: Wilmington, Delaware
      September 7, 2007

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ Ian S. Fredericks
    Pauline K. Morgan (PM - 3361)
    Ian S. Fredericks (*pro hac vice*)

The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253

*Attorneys for Manufactures & Traders Trust Company,*
*as Successor Indenture Trustee for the 7.75%*
*Contingent Convertible Notes Due 2015 issued by*
*Calpine Corporation*

21