# **EXHIBIT A**

Exhibit A

CALPINE CORPORATION

and

WILMINGTON TRUST COMPANY, Trustee

Indenture

Dated as of August 10, 2000

Debt Securities

701415/00021/217635 V6

TABLE OF CONTENTS

Page

ARTICLE I
DEFINITIONS AND INCORPORATION BY REFERENCE

SECTION 1.1    Definitions ............................................................................... 5
SECTION 1.2    Other Definitions ..................................................................... 11
SECTION 1.3    Incorporation by Reference of TIA ........................................ 11
SECTION 1.4    Rules of Construction .............................................................. 12

ARTICLE II
THE SECURITIES

SECTION 2.1     Securities Issuable in Series ................................................... 12
SECTION 2.2     Form and Dating ...................................................................... 14
SECTION 2.3     Execution and Authentication ................................................. 15
SECTION 2.4     Registrar and Paying Agent ..................................................... 16
SECTION 2.5     Paying Agent To Hold Money in Trust .................................... 16
SECTION 2.6     Securityholder Lists ................................................................. 17
SECTION 2.7     Transfer and Exchange ............................................................ 17
SECTION 2.8     Replacement Securities ............................................................ 19
SECTION 2.9     Outstanding Securities ............................................................. 19
SECTION 2.10    Determination of Holders' Action ........................................... 20
SECTION 2.11    Temporary Securities ............................................................... 20
SECTION 2.12    Cancellation ............................................................................. 20
SECTION 2.13    Defaulted Interest ..................................................................... 20

ARTICLE III
COVENANTS

SECTION 3.1     Payment of Securities .............................................................. 21
SECTION 3.2     Maintenance of Office or Agency ........................................... 21
SECTION 3.3     Limitation on Sale/Leaseback Transactions ............................ 21
SECTION 3.4     Limitation on Liens .................................................................. 22
SECTION 3.5     Compliance Certificate ............................................................ 23
SECTION 3.6     SEC Reports .............................................................................. 23
SECTION 3.7     Further Instruments and Acts ................................................... 24
SECTION 3.8     Waiver of Certain Covenants ................................................... 24

ARTICLE IV
CONSOLIDATION, MERGER, SALE AND LEASE

SECTION 4.1     Merger and Consolidation of Company .................................... 24
SECTION 4.2     Successor Substituted ............................................................... 25

2

**Page**

## ARTICLE V
### DEFAULTS AND REMEDIES

| | | |
|---|---|---|
| SECTION 5.1 | Events of Default | 25 |
| SECTION 5.2 | Acceleration | 27 |
| SECTION 5.3 | Other Remedies | 27 |
| SECTION 5.4 | Waiver of Past Defaults | 27 |
| SECTION 5.5 | Control by Majority | 28 |
| SECTION 5.6 | Limitation on Suits | 28 |
| SECTION 5.7 | Rights of Holders To Receive Payment | 28 |
| SECTION 5.8 | Collection Suit by Trustee | 29 |
| SECTION 5.9 | Trustee May File Proofs of Claim | 29 |
| SECTION 5.10 | Priorities | 29 |
| SECTION 5.11 | Undertaking for Costs | 30 |
| SECTION 5.12 | Waiver of Stay or Extension Laws | |

## ARTICLE VI
### TRUSTEE

| | | |
|---|---|---|
| SECTION 6.1 | Duties of Trustee | 30 |
| SECTION 6.2 | Rights of Trustee | 31 |
| SECTION 6.3 | Individual Rights of Trustee | 32 |
| SECTION 6.4 | Trustee's Disclaimer | 32 |
| SECTION 6.5 | Notice of Defaults | 32 |
| SECTION 6.6 | Reports by Trustee to Holders | 32 |
| SECTION 6.7 | Compensation and Indemnity | 33 |
| SECTION 6.8 | Replacement of Trustee | 35 |
| SECTION 6.9 | Successor Trustee by Merger, etc | 35 |
| SECTION 6.10 | Eligibility; Disqualification; Conflicting Interests | 35 |
| SECTION 6.11 | Preferential Collection of Claims Against Company | |

## ARTICLE VII
### SATISFACTION AND DISCHARGE OF INDENTURE

| | | |
|---|---|---|
| SECTION 7.1 | Discharge of Liability on Securities | 35 |
| SECTION 7.2 | Termination of Company's Obligations | 36 |
| SECTION 7.3 | Defeasance and Discharge of Indenture | 37 |
| SECTION 7.4 | Defeasance of Certain Obligations | 38 |
| SECTION 7.5 | Application of Trust Money | 40 |
| SECTION 7.6 | Repayment to Company | 40 |
| SECTION 7.7 | Reinstatement | 40 |
| SECTION 7.8 | Deposited Money and U.S. Government Obligations to be Held in Trust | 41 |
| | Miscellaneous Provisions | |

## ARTICLE VIII
### AMENDMENTS AND SUPPLEMENTS

| | | |
|---|---|---|
| SECTION 8.1 | Without Consent of Holders | 41 |
| SECTION 8.2 | With Consent of Holders | 42 |

|  |  | Page |
|---|---|---|
| SECTION 8.3 | Compliance with Trust Indenture Act | 42 |
| SECTION 8.4 | Revocation and Effect of Consents | 42 |
| SECTION 8.5 | Notation on or Exchange of Securities | 43 |
| SECTION 8.6 | Trustee To Sign Amendments | 43 |
| SECTION 8.7 | Fixing of Record Dates | 43 |

## ARTICLE IX
### REDEMPTION

| SECTION 9.1 | Applicability of Article | 44 |
|---|---|---|
| SECTION 9.2 | Election to Redeem; Notice to Trustee | 44 |
| SECTION 9.3 | Selection by Trustee of Securities to be Redeemed | 44 |
| SECTION 9.4 | Notice of Redemption | 44 |
| SECTION 9.5 | Deposit of Redemption Price | 45 |
| SECTION 9.6 | Securities Redeemed in Part | 45 |

## ARTICLE X
### MISCELLANEOUS

| SECTION 10.1 | Trust Indenture Act Controls | 46 |
|---|---|---|
| SECTION 10.2 | Notices | 46 |
| SECTION 10.3 | Communication by Holders with Other Holders | 47 |
| SECTION 10.4 | Certificate and Opinion as to Conditions Precedent | 47 |
| SECTION 10.5 | Statements Required in Certificate or Opinion | 47 |
| SECTION 10.6 | Rules by Trustee and Agents | 47 |
| SECTION 10.7 | Legal Holidays | 47 |
| SECTION 10.8 | Successors; No Recourse Against Others | 48 |
| SECTION 10.9 | Duplicate Originals | 48 |
| SECTION 10.10 | Other Provisions | 48 |
| SECTION 10.11 | Governing Law | 48 |
| SIGNATURES | | 49 |
| EXHIBIT A – Form of Security | | A-1 |

4

INDENTURE, dated as of August 10, 2000, between Calpine Corporation, a Delaware corporation (the "Company"), and Wilmington Trust Company, a Delaware banking corporation (the "Trustee").

WHEREAS, the Company desires to issue debt securities in one or more series from time to time hereunder in an unlimited aggregate principal amount; and

WHEREAS, the Trustee desires to act as Trustee with respect to such securities;

NOW, THEREFORE, each party agrees as follows for the benefit of the other parties and for the equal and ratable benefit of the holders of such securities or of series thereof:

## ARTICLE I

## DEFINITIONS AND INCORPORATION BY REFERENCE

SECTION 1.1 <u>Definitions</u>.

"Affiliate" of any specified Person means any other Person, directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control", when used with respect to any Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Agent" means, with respect to any Series of Securities, any Registrar, Paying Agent, authenticating agent, co-registrar or additional paying agent appointed pursuant to this Indenture with respect to such Series.

"Attributable Debt" in respect of a Sale/Leaseback Transaction means, as at the time of determination, the present value (discounted at the rate of interest set forth or implicit in the terms of such lease (or, if not practicable to determine such rate, the weighted average rate of interest borne by the Securities outstanding hereunder (calculated, in the event of the issuance of any original issue discount Securities, based on the imputed interest rate with respect thereto)), compounded annually) of the total obligations of the lessee for rental payments during the remaining term of the lease included in such Sale/Leaseback Transaction (including any period for which such lease has been extended).

"Average Life" means, as of the date of determination, with respect to any Indebtedness or Preferred Stock, the quotient obtained by dividing (i) the sum of the products of (A) the numbers of years from the date of determination to the dates of each successive scheduled principal payment of such Indebtedness or scheduled redemption or similar payment with respect to such Indebtedness or Preferred Stock multiplied by (B) the amount of such payment by (ii) the sum of all such payments.

"Board of Directors" means the Board of Directors of the Company or any authorized committee thereof.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"Business Day" means each day which is not a Legal Holiday.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation or any and all equivalent ownership interests in a Person (other than a corporation).

"Capitalized Lease Obligations" of any Person means the rental obligations under any lease of any property (whether real, personal or mixed) of which the discounted present value of the rental obligations of such Person as lessee, in conformity with GAAP, is required to be capitalized on the balance sheet of such Person; the Stated Maturity of any such lease shall be the date of the last payment of rent or any other amount due under such lease prior to the first date upon which such lease may be terminated by the lessee without payment of a penalty.

"Code" means the Internal Revenue Code of 1986, as amended.

"Common Stock" means the Common Stock, par value $.001 per share, of the Company.

"Company" means the party named as such in this Indenture until a successor replaces it pursuant to the terms and conditions of this Indenture and thereafter means the successor.

"Consolidated Current Liabilities," as of the date of determination, means the aggregate amount of consolidated liabilities of the Company and its consolidated Restricted Subsidiaries which may properly be classified as current liabilities (including taxes accrued as estimated), after eliminating (i) all inter-company items between the Company and its Subsidiaries and (ii) all current maturities of long-term Indebtedness, all as determined in accordance with GAAP.

"Consolidated Net Tangible Assets" means, as of any date of determination, as applied to the Company, the total amount of Consolidated assets (less accumulated depreciation or amortization, allowances for doubtful receivables, other applicable reserves and other properly deductible items) under GAAP which would appear on a Consolidated balance sheet of the Company and its Subsidiaries, determined in accordance with GAAP, and after giving effect to purchase accounting and after deducting therefrom, to the extent otherwise included, the amounts of: (i) Consolidated Current Liabilities; (ii) minority interests in consolidated Restricted Subsidiaries held by Persons other than the Company or a Restricted Subsidiary; (iii) excess of cost over fair value of assets of businesses acquired, as determined in good faith by the Board of Directors; (iv) any revaluation or other write-up in value of assets subsequent to December 31, 1993 as a result of a change in the method of valuation in accordance with GAAP; (v) unamortized debt discount and expenses and other unamortized deferred charges, goodwill, patents, trademarks, service marks, trade names, copyrights, licenses, organization or developmental expenses and other intangible items; (vi) treasury stock; and (vii) any cash set apart and held in a sinking or other analogous fund established for the purpose of redemption or other retirement of Capital Stock to the extent such obligation is not reflected in Consolidated Current Liabilities.

"Consolidation" means, with respect to any Person, the consolidation of accounts of such Person and each of its subsidiaries if and to the extent the accounts of such Person and such subsidiaries are consolidated in accordance with GAAP. The term "Consolidated" shall have a correlative meaning.

"Default" means any event which is, or after notice or passage of time or both would be, an Event of Default.

6

"Defaulted Interest" means any interest on any Security which is payable, but is not punctually paid or duly provided for on any Interest Payment Date, such Defaulted Interest to accrue (except as otherwise provided in accordance with Section 2.1) at the same rate per annum as interest accrued or accreted, as the case may be, on the Business Day immediately preceding such Interest Payment Date.

"Depository" means The Depository Trust Company, its nominees, and their respective successors until a successor Depository shall have become such pursuant to the applicable provisions of this Indenture and thereafter "Depository" shall mean or include each Person who is then a Depository hereunder.

"Directors' Certificate" means a certificate signed by two members of the Board of Directors.

"Exchange Act" means the Securities Exchange Act of 1934, as amended.

"GAAP" means generally accepted accounting principles in the United States of America as in effect and, to the extent optional, adopted by the Company, on the date of the Indenture, consistently applied.

"Guarantee" means, as applied to any obligation, contingent or otherwise, of any Person, (i) a guarantee, direct or indirect, in any manner, of any part or all of such obligation (other than by endorsement of negotiable instruments for collection in the ordinary course of business) and (ii) an agreement, direct or indirect, contingent or otherwise, the practical effect of which is to insure in any way the payment or performance (or payment of damages in the event of nonperformance) of any part or all of such obligation, including the payment of amounts drawn down under letters of credit.

"Holder" or "Securityholder" means the Person in whose name a Security is registered on the Registrar's books.

"Incur" means, as applied to any obligation, to create, incur, issue, assume, guarantee or in any other manner become liable with respect to, contingently or otherwise, such obligation, and "Incurred," "Incurrence" and "Incurring" shall each have a correlative meaning; provided, however, that any amendment, modification or waiver of any provision of any document pursuant to which Indebtedness was previously Incurred shall not be deemed to be an Incurrence of Indebtedness as long as (i) such amendment, modification or waiver does not (A) increase the principal or premium thereof or interest rate thereon, (B) change to an earlier date the Stated Maturity thereof or the date of any scheduled or required principal payment thereon or the time or circumstances under which such Indebtedness may or shall be redeemed, (C) if such Indebtedness is contractually subordinated in right of payment to the Securities, modify or affect, in any manner adverse to the Holders, such subordination or (D) if the Company is the obligor thereon, provide that a Restricted Subsidiary shall be an obligor and (ii) such Indebtedness would, after giving effect to such amendment, modification or waiver as if it were an Incurrence, comply with clause (i) of the first proviso to the definition of "Refinancing Indebtedness."

"Indebtedness" of any Person means, without duplication, (i) the principal in respect of indebtedness of such Person for money borrowed and; (ii) all Capitalized Lease Obligations of such Person; (iii) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction (other than obligations with respect to letters of credit securing obligations (other than obligations described in (i) and (ii) above) entered into in the ordinary course of business of such Person to the extent such letters of credit are not drawn upon or, if and to the extent drawn upon, such drawing is reimbursed no later than

7

the tenth Business Day following receipt by such Person of a demand for reimbursement following payment on the letter of credit); (iv) all obligations of the type referred to in clauses (i) through (iii) of other Persons and all dividends of other Persons for the payment of which, in either case, such Person is responsible or liable, directly or indirectly, as obligor, guarantor or otherwise; and (v) all obligations of the type referred to in clauses (i) through (iv) of other Persons secured by any Lien on any property or asset of such Person (whether or not such obligation is assumed by such Person), the amount of such obligation on any date of determination being deemed to be the lesser of the value of such property or assets or the amount of the obligation so secured. The amount of Indebtedness of any Person at any date shall be, with respect to unconditional obligations, the outstanding balance at such date of all such obligations as described above and, with respect to any contingent obligations at such date, the maximum liability determined by such Person's board of directors, in good faith, as, in light of the facts and circumstances existing at the time, reasonably likely to be Incurred upon the occurrence of the contingency giving rise to such obligation.

"Indenture" means, with respect to each Series of Securities, this Indenture as originally executed or as it is amended or supplemented from time to time by one or more indentures supplemental hereto entered into in accordance with the applicable provisions hereof, and shall include the terms of each particular Series of Securities established as contemplated by Section 2.1.

"Interest Payment Date" means, with respect to any Series, the stated maturity of an installment of interest on the Securities of such Series.

"Lien" means any mortgage, lien, pledge, charge, or other security interest or encumbrance of any kind (including any conditional sale or other title retention agreement and any lease in the nature thereof).

"Officer" means the Chairman, the President, any Vice President, the Chief Operating Officer, the Chief Financial Officer, the Treasurer, the Secretary, any Assistant Treasurer, any Assistant Secretary or the Controller or Principal Accounting Officer of the Company.

"Officers' Certificate" means a certificate signed by two Officers, one of whom must be the President, the Treasurer or a Vice President. Each Officers' Certificate (other than certificates provided pursuant to TIA Section 314(a)(4)) shall include the statements provided for in TIA Section 314(e), if applicable.

"Opinion of Counsel" means a written opinion from legal counsel who is acceptable to the Trustee. The counsel, if so acceptable, may be an employee of or counsel to the Company or the Trustee. Each such Opinion of Counsel shall include the statements provided for in TIA Section 314(e), if applicable.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof or any other entity.

"Preferred Stock", as applied to the Capital Stock of any corporation, means Capital Stock of any class or classes (however designated) which is preferred as to the payment of dividends, or as to the distribution of assets upon any voluntary or involuntary liquidation or dissolution of such corporation, over shares of Capital Stock of any other class of such corporation.

8

"Principal" of a Security means the principal of the Security plus, if applicable, the premium on the Security due on the Stated Maturity or on a Redemption Date.

"Redemption Date" means, when used with respect to any Security of any Series to be redeemed, the date fixed for such redemption by or pursuant to this Indenture.

"Redemption Price" means, when used with respect to any Security of any Series to be redeemed, the price specified in such Security at which it is to be redeemed pursuant to this Indenture.

"Refinancing Indebtedness" means Indebtedness that refunds, refinances, replaces, renews, repays or extends (including pursuant to any defeasance or discharge mechanism) (collectively, "refinances," and "refinanced" shall have a correlative meaning) any Indebtedness of the Company or a Restricted Subsidiary existing on the date of this Indenture or Incurred in compliance with the Indenture (including Indebtedness of the Company that refinances Indebtedness of any Restricted Subsidiary and Indebtedness of any Restricted Subsidiary that refinances Indebtedness of another Restricted Subsidiary) including Indebtedness that refinances Refinancing Indebtedness; provided, however, that (i) if the Indebtedness being refinanced is contractually subordinated in right of payment to the Securities, the Refinancing Indebtedness shall be contractually subordinated in right of payment to the Securities to at least the same extent as the Indebtedness being refinanced, (ii) the Refinancing Indebtedness is scheduled to mature either (a) no earlier than the Indebtedness being refinanced or (b) after the Stated Maturity of the Securities, (iii) the Refinancing Indebtedness has an Average Life at the time such Refinancing Indebtedness is Incurred that is equal to or greater than the Average Life of the Indebtedness being refinanced and (iv) such Refinancing Indebtedness is in an aggregate principal amount (or if issued with original issue discount, an aggregate issue price) that is equal to or less than the aggregate principal amount (or if issued with original issue discount, the aggregate accreted value) then outstanding (plus fees and expenses, including any premium, swap breakage and defeasance costs) under the Indebtedness being refinanced; and provided, further, that Refinancing Indebtedness shall not include (x) Indebtedness of a Subsidiary of the Company that refinances Indebtedness of the Company or (y) Indebtedness of the Company or a Restricted Subsidiary that refinances Indebtedness of an Unrestricted Subsidiary.

"Restricted Subsidiary" means any Subsidiary of the Company that is not designated an Unrestricted Subsidiary by the Board of Directors.

"Sale/Leaseback Transaction" means an arrangement relating to property now owned or hereafter acquired whereby the Company or a Subsidiary transfers such property to a Person and leases it back from such Person, other than leases for a term of not more than 36 months or between the Company and a Wholly Owned Subsidiary or between Wholly Owned Subsidiaries.

"SEC" means the Securities and Exchange Commission.

"Securities" means unsecured debentures, notes or other evidence of indebtedness of the Company that are issued under and pursuant to the terms of this Indenture.

"Securities Act" means the Securities Act of 1933, as amended.

"Senior Indebtedness" means all indebtedness incurred, assumed or guaranteed by the Company, whether or not represented by bonds, debentures notes or other securities, for money borrowed, and any deferrals, renewals

or extensions or refunding of any such indebtedness, unless in the instrument creating or evidencing any such indebtedness or pursuant to which the same is outstanding it is specifically stated, at or prior to the time the Company becomes liable in respect thereof, that any such indebtedness or such deferral, renewal, extension or refunding thereof is not Senior Indebtedness.

"Significant Subsidiary" means any Subsidiary (other than an Unrestricted Subsidiary) that would be a "Significant Subsidiary" of the Company within the meaning of Rule 1-02 under Regulation S-X promulgated by the SEC.

"Stated Maturity" means, with respect to any security, the date specified in such security as the fixed date on which the principal of such security is due and payable, including pursuant to any mandatory redemption provision (but excluding any provision providing for the repurchase of such security at the option of the holder thereof upon the happening of any contingency).

"Subsidiary" means, as applied to any Person, any corporation, partnership, trust, association or other business entity of which an aggregate of at least 50% of the outstanding Voting Shares or an equivalent controlling interest therein, of such Person is, at the time, directly or indirectly, owned by such Person and/or one or more Subsidiaries of such Person.

"TIA" means the Trust Indenture Act of 1939 (15 U.S.C. Sections 77aaa-77bbbb) as in effect on the date first above written.

"Trustee" means the party named as such above until a successor replaces it and thereafter means the successor, and if at any time there is more than one such Person, "Trustee" as used with respect to the Securities of any Series shall mean the Trustee with respect to the Securities of that Series.

"Trust Officer" means any officer of the Trustee assigned by the Trustee to administer its corporate trust matters or to whom any corporate trust matter is referred because of that officer's knowledge of and familiarity with the particular subject.

"Uniform Commercial Code" means the New York Uniform Commercial Code as in effect from time to time.

"Unrestricted Subsidiary" means (i) any Subsidiary that at the time of determination shall be designated an Unrestricted Subsidiary by the Board of Directors in the manner provided below and (ii) any Subsidiary of an Unrestricted Subsidiary. The Board of Directors may designate any Subsidiary (including any newly acquired or newly formed Subsidiary) to be an Unrestricted Subsidiary unless such Subsidiary owns any Capital Stock of, or owns or holds any Lien on any property of, the Company or any other Subsidiary that is not a Subsidiary of the Subsidiary to be so designated; provided, that the Subsidiary to be so designated and all other Subsidiaries previously so designated at the time of any determination hereunder shall, in the aggregate, have total assets not greater than 5% of Consolidated Net Tangible Assets as determined based on the Consolidated balance sheet of the Company as of the end of the most recent fiscal quarter for which financial statements are available. The Board of Directors may designate any Unrestricted Subsidiary to be a Restricted Subsidiary of the Company; provided, however, that immediately after giving effect to such designation no Default or Event of Default shall have occurred and be continuing. Any such designation by the Board of Directors shall be evidenced to the Trustee by promptly filing with the Trustee a Board Resolution giving effect to such

designation and an Officers' Certificate certifying that such designation complied with the foregoing provision; provided, however, that the failure to so file such resolution and/or Officers' Certificate with the Trustee shall not impair or affect the validity of such designation.

"U.S. Government Obligations" means securities that are (i) direct obligations of the United States of America for the payment of which its full faith and credit is pledged or (ii) obligations of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America, which, in either case under clauses (i) or (ii) are not callable or redeemable before the Stated Maturity thereof.

"Voting Shares," with respect to any corporation, means the Capital Stock having the general voting power under ordinary circumstances to elect at least a majority of the board of directors (irrespective of whether or not at the time stock of any other class or classes shall have or might have voting power by reason of the happening of any contingency).

"Wholly Owned Subsidiary" means a Subsidiary (other than an Unrestricted Subsidiary) all the Capital Stock of which (other than directors' qualifying shares) is owned by the Company or another Wholly Owned Subsidiary.

SECTION 1.2 <u>Other Definitions</u>.

| TERM | DEFINED IN SECTION |
|---|---|
| "Additional Securities" | 2.1 |
| "Bankruptcy Law" | 5.1 |
| "Custodian" | 5.1 |
| "Event of Default" | 5.1 |
| "Global Securities" | 2.2 |
| "Legal Holiday" | 10.7 |
| "Notice of Default" | 5.1 |
| "Paying Agent" | 2.4 |
| "Registrar" | 2.4 |
| "Series" | 2.1 |
| "Successor Corporation" | 4.1(i) |

SECTION 1.3 <u>Incorporation by Reference of TIA</u>.

Whenever this Indenture refers to a provision of the TIA, the provision is incorporated by reference in and made a part of this Indenture.

The following TIA terms used in this Indenture have the following meanings:

"Commission" means the SEC;

"indenture securities" means the Securities;

"indenture security holder" means a Holder or Securityholder;

11

"indenture to be qualified" means this Indenture;

"indenture trustee" or "institutional trustee" means the Trustee; and

"obligor" on the indenture securities means the Company or any other obligor on the indenture securities.

All other terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by SEC rule under the TIA have the meanings assigned to them by the TIA.

SECTION 1.4 Rules of Construction.

Unless the context otherwise requires:

(a) a term has the meaning assigned to it;

(b) "generally accepted accounting principles" means, and any accounting term not otherwise defined has the meaning assigned to it and shall be construed in accordance with, GAAP;

(c) "or" is not exclusive;

(d) words in the singular include the plural, and in the plural include the singular;

(e) provisions apply to successive events and transactions;

(f) "including" means "including, without limitation";

(g) unsecured debt shall not be deemed to be subordinate or junior to secured debt merely by virtue of its nature as unsecured debt;

(h) the principal amount of any non-interest bearing or other discount Security at any date shall be the principal amount thereof that would be shown on a balance sheet of the Company dated such date prepared in accordance with generally accepted accounting principles; and

(i) the principal amount (if any) of any Preferred Stock shall be the greatest of (i) the stated value, (ii) the redemption price or (iii) the liquidation preference of such Preferred Stock.

## ARTICLE II

## THE SECURITIES

SECTION 2.1 Securities Issuable in Series.

Securities may be issued hereunder in one or more series, each series (a "Series") having identical terms but for authentication date and public offering price. Securities of any one Series need not be issued at the same

12

time and, unless specifically provided otherwise, a Series may be reopened, without the consent of the Holders, for issuances of additional Securities of such Series.

Securities issued hereunder shall be issued pursuant to authority granted by or pursuant to a Board Resolution and, prior to the issue hereunder of the first Securities of a Series, the Company shall set forth in a Directors' Certificate, or establish in one or more indentures supplemental hereto, the following terms which shall be applicable to such Series:

(1) the title, including CUSIP number, of the Series (which shall distinguish the Securities of such Series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or for replacement of, or in lieu of, other Securities of the Series pursuant to Sections 2.7, 2.8, 2.11, 8.5 or 9.6);

(3) the date or dates on which the principal of the Securities of the Series are payable;

(4) the rate or rates, or the method of determination thereof, at which the Securities of the Series shall bear interest, if any, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable and the record dates for the determination of Holders to whom interest is payable;

(5) the place or places where the principal of, and interest on Securities of the Series shall be payable;

(6) the obligation, if any, of the Company to redeem, purchase or repay the Securities of such Series pursuant to any right to do so contained in the Securities or pursuant to sinking fund or analogous provisions or at the option of a Holder thereof and the price or prices at which and the period or periods within which and the terms and conditions upon which the Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation;

(7) the denominations in which the Securities of such Series shall be issuable, if other than integral multiples of $1,000;

(8) if other than the principal amount thereof, the portion of the principal amount of the Securities of such Series which shall be payable upon the declaration of acceleration of the maturity thereof pursuant to Section 5.2;

(9) any Events of Default or covenants with respect to the Securities of such Series, if not set forth in this Indenture;

(10) if other than those named herein, any other depositaries, authenticating or paying agents, transfer agents or registrars or any other agents with respect to such Series;

(11) the stock exchanges, if any, on which the Securities will be listed and related information;

(12) any applicable restrictions on the transfer of any of the Securities of such Series;

(13) if other than the currency of the United States of America, the currency, currencies or currency units in which the principal of or interest, if any, on any Securities of the Series shall be payable and the manner of determining the equivalent thereof in the currencies of the United States of America for any purpose;

(14) if applicable, the terms of any right to convert Securities of the Series into, or to exchange Securities of the Series for, shares of Common Stock or other securities or property; and

(15) Whether the Securities of the Series shall be issued in whole or in part in the form of one or more Global Securities, the Depository for the Series, if other than The Depository Trust Company or its successors, and any circumstances in addition to or in lieu of those set forth in Section 2.7 in which any Global Security may be exchanged in whole or in part for Securities registered, and any transfer of such Global Security in whole or in part may be registered, in the name or names of Persons other than the Depository for such Global Security or a nominee thereof;

(16) any other terms of the Series (which terms shall not be inconsistent with the provisions of this Indenture).

All Securities of any one Series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such Directors' Certificate.

Additional Securities of the same Series may be issued subsequent to the original issue date of any Securities of such Series (hereinafter called "Additional Securities") following the receipt of the Trustee of a Directors' Certificate pertaining to such Additional Securities, which Directors' Certificate will identify the Series to which such Additional Securities belongs and the issue date and aggregate principal amount of the Securities of such Additional Securities. Any such Additional Securities shall be issued on original issue as provided in Section 2.3.

Additional Securities, together with each prior and subsequent Securities of the same Series, shall constitute one and the same Series of Securities for all purposes under this Indenture.

SECTION 2.2  Form and Dating.

The Securities and the Trustee's certificate of authentication shall be substantially in the form of Exhibit A annexed hereto, which is part of this Indenture, with such appropriate insertions, omissions and other variations as are required or permitted by this Indenture, and may have such legends or endorsements placed thereon as the Officers executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Indenture. The Securities may have notations, legends or endorsements required by law, stock exchange rule or usage. Each Security shall be dated the date of its authentication.

The terms and provisions contained in the form of Securities annexed hereto as Exhibit A shall constitute, and are expressly made, a part of this Indenture. To the extent applicable, the Company and the Trustee, by their execution and delivery of this Indenture, expressly agree to such terms and provisions and to be bound thereby.