# **EXHIBIT M**

KELLEY DRYE & WARREN LLP  
Sarah L. Reid (SR-4603)  
David E. Retter (DR-4014)  
Damon W. Suden (DS-8384)  
Jennifer A. Christian (JC-7305)  
101 Park Avenue  
New York, New York 10178  
Telephone: (212) 808-7800  
Facsimile: (212) 808-7897  

Hearing Date: August 8, 2007 at 10:00 a.m. (ET)  
Objection Deadline: July 27, 2007 at 12:00 p.m. (ET)[1]

ATTORNEYS FOR  
HSBC BANK USA, N.A., AS INDENTURE TRUSTEE  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**CALPINE CORPORATION**, *et al.*,<br><br>Debtors. | **Chapter 11**<br><br>Case No. 05-60200 (BRL)<br>**Jointly Administered** |

**HSBC BANK USA, N.A.'S (1) RESPONSE TO DEBTORS' LIMITED OBJECTION TO CONVERTIBLE NOTEHOLDER CLAIM NOS. 2404, 2821, 2823, 6247, 6249, 6280, 6299 AND 6300, AND (2) JOINDER TO RESPONSE OF THE 6% CONVERTIBLE NOTEHOLDERS TO THE DEBTORS' LIMITED OBJECTION**

HSBC Bank USA, National Association ("HSBC") as the successor Indenture Trustee, under the Amended and Restated Indenture, dated as of March 12, 2004 (the "Indenture"), between Calpine Corporation (the "Company"), as Issuer, and Wilmington Trust Company, as predecessor Indenture Trustee, pursuant to which the Company issued $900,000,000 aggregate principal amount of its 4.75% Contingent Convertible Notes Due 2023 (the "4.75% Notes"), $725,000,000 aggregate principal amount of its 6% Contingent Convertible Notes Due 2014 (the "6% Notes"), and $400,000,000 aggregate principal amount of its 4% Convertible Senior Notes Due 2006 (the "4% Notes") by and through its attorneys Kelley Drye & Warren LLP, hereby: (1) responds to the Debtors' Limited Objection to Convertible Noteholder Claim Nos. 2404, 2821,

---

[1] Objection deadline extended, by agreement, to Monday July 30, 2007 at 5:00 p.m. (ET).

5449

2823, 6247, 6249, 6280, 6299 and 6300 (the "Debtors' Objection")[2]; and (2) joins in the Response of the 6% Convertible Noteholders, filed by Milbank, Tweed, Hadley & McCloy LLP on July 27, 2007. HSBC also adopts the arguments advanced in the Response of Certain Holders of 7.75% Contingent Convertible Notes Due 2015, to the extent applicable herein.

## PRELIMINARY STATEMENT

1. By this objection, the Debtors attempt to deny the holders of the 4.75% Notes the full value of their bargain. There is nothing "creative" about the 4.75% Noteholders' attempts to recover the damages which will be caused by the Debtors' prepayment of the Notes. To the contrary, the 4.75% Noteholders' expectation of irrevocable conversion rights will be dashed upon early repayment and both the governing Indenture, the case law, and this Court's prior CalGen Decision[3] allow the 4.75% Noteholders to recover damages for breach of that right.

2. To avoid damages, the Debtors argue that HSBC's claim was not timely filed. But this is wrong. The original proof of claim, which was timely filed, expressly incorporated the provisions of the Indenture, including the Article 10 codification of the 4.75% Noteholders' Conversion Right, and all provisions allowing recovery for the Debtors' breach of contract. Moreover, the proof of claim asserted claims for all other unliquidated amounts including, but not limited to, "liquidated damages," "redemption premiums" and "compensatory, secondary, and/or punitive damages." Thus, the 4.75% Noteholders' claim for damages for breach of the Conversion Right is plainly incorporated in the original proof of claim.[4]

---

[2] The 4% Notes have already matured and are therefore not at issue.

[3] The CalGen Decision, discussed herein, refers to *In re Calpine Corp.*, Case No. 05-60200 (BRL), 2007 Bankr. LEXIS 645 (Bankr. S.D.N.Y. March 5, 2007).

[4] HSBC is prepared to present an expert evaluation of the amount of the damages incurred as a result of the Debtors' breach of the 4.75% Noteholders' Conversion Right at an appropriate time. At issue presently is the Debtors' Limited Objection seeking to avoid liability for breach of the Conversion Right. Therefore, it is premature to present a damages calculation, as this Court need only recognize that the breach of the 4.75% Noteholders' Conversion Right is a contractual breach of the Indenture giving rise to damages.

3. To expound on the original proof of claim and provide even more detail to the Debtors, HSBC filed a supplemental proof of claim. This supplement related back to the original proof of claim and simply highlighted the 4.75% Noteholders' claim for breach of contract damages. Thus, even if the original proof of claim is not read to incorporate such claims, the supplement should be allowed as an amendment. The Debtors have not articulated any prejudice which would flow from allowance of the supplemental proof of claim and cannot because they were aware of the 4.75% Noteholders' claim to damages for breach of the conversion rights. This is especially so here, where the Debtors have just adjourned the hearing on the Disclosure Statement in order to investigate other options for the Plan. (*See* Exhibit A.)

4. Thus, this Court should reject the Debtors' limited objection insofar as it seeks to disallow HSBC's claims on behalf of the Convertible Noteholders to recover the full benefit of their bargains in the form of breach of contract damages for early payments depriving the Noteholders of ever exercising their conversion rights.

## BACKGROUND

5. Pursuant to the Indenture, Calpine Corporation (the "Issuer") issued $900,000,000 aggregate principal amount of its 4.75% Contingent Convertible Notes Due 2023. The Indenture, as Amended and Restated as of March 12, 2004, is attached hereto as Exhibit B. The Indenture grants the Noteholders a right to convert the 4.75% Convertible Notes into common stock and cash at any time subject to certain conditions set forth in Section 10.01(a), until 2023, the stated date of maturity in the Indenture. The Indenture explicitly contemplates that in the

---

Similarly, the Debtors inclusion of an argument seeking to subordinate HSBC's rightful damages to equity is premature and without legal foundation. (Objection, at 27-30). The 4.75% Noteholders will establish, when the issue is rightfully before this Court, that their damages claim related to the Debtors' breach of the Conversion Right is an unsecured claim. It is noteworthy that the Debtors' objection seeks no relief related to its subordination argument. HSBC respectfully refers the Court to Point III of the Response of Certain Holders of 7.75% Contingent Convertible Notes Due 2015 for arguments demonstrating why subordination is without foundation.

Event of Default, as defined in 6.01 of the Indenture, which includes a filing for bankruptcy, the Conversion Right will survive, and provides the formula for the common stock to be delivered pursuant to the exercise of the Conversion Right if the Right is exercised while an Event of Default is pending.

6. By this Court's Order Establishing A Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 1348], August 1, 2006 was established as the deadline to file proofs of claim in these Chapter 11 Cases on account of the claims arising prior to the Petition Date (the "Bar Date").

7. HSBC submitted Proof of Claim No. 2823 (the "Original Proof of Claim"), dated July 26, 2006, asserting claims on account of the 4.75% Notes for (a) principal outstanding as of the Petition Date in the amount of $633,775,000.00, (b) accrued unpaid interest to the Petition Date in the amount of $2,926,808.16, and (c) other unliquidated amounts including "liquidated damages" and "compensatory, secondary, and/or punitive damages." This claim included an "Inquiry Notice" incorporating the provisions of the Notes and the Indenture into the Proof of Claim and advising all interested parties to examine the provisions of the Notes and the Indenture. This claim also included an explicit "Reservation of Rights" in which HSBC "reserves the right to amend or supplement this claim at any time and in any respect." The Original Proof of Claim is attached hereto as Exhibit C.

8. HSBC submitted a Supplement to Proof of Claim (the "Original Supplement") to the Original Proof of Claim, dated March 28, 2007, and recorded as claim number 6249. This Original Supplement amplified the Noteholders' "claims in an unliquidated amount, for among other things, 'any and all other amounts due or to become due under the Indenture and the [4.75% Notes]'." (Original Supplement, at 2.) The Original Supplement clarified that the

Original Proof of Claim encompassed any and all claims on account of the Noteholders' rights of conversion. The Original Supplement is attached hereto as Exhibit D.

9. HSBC submitted an amended supplement (the "Supplement") to the 4.75% Original Proof of Claim, dated May 21, 2007, and recorded as claim number 6300. The Supplement "replaces and restates Proof of Claim number 6249 in its entirety." The Supplement is attached hereto as Exhibit E.

## ARGUMENT

I. **HSBC's Conversion Claim is Timely**

    A. **The 4.75% Convertible Notes Original Proof of Claim Timely Asserted A Claim For Breach Of Contract Damages**

10. The timely filed Original Proof of Claim encompasses damages for the breach of the rights of conversion. Paragraph 2(d) of the Original Proof of Claim, to the extent relating to the Indenture and the 4.75% Notes issued thereunder, included claims for other unliquidated amounts.

11. The Original Proof of Claim provided:

> The Company is obligated to HSBC, as Indenture Trustee, for any and all other amounts due or to become due under the Indenture and the Notes, whether now due or hereafter arising, which amounts may, presently, be unliquidated or contingent, but may become fixed and liquidated in the future, including, but not limited to, amounts as or for interest, liquidated damages, optional or mandatory redemptions, redemption premiums, redemption prices, expenses, indemnities, compensatory, secondary and/or punitive damages, and all compensation obligations, including, but not limited to, compensation obligations to the paying agent and registrar, all present or future stamp, court, documentary, excise or property taxes, charges or similar levies, the holders' rights to require the Company to purchase the Notes in connection with a change of control and/or asset sales, and any and all payment obligations of, or relating to, any other or additional amounts, any registration obligations under the Registration Rights Agreement dated September 5, 1997, between the Company and Credit Suisse

>First Boston Corporation, the Indenture covenants limiting Liens, Sale and Leaseback Transactions, and Issuance of Additional Notes, and change of control payments, asset sales and excess proceeds, all as defined and described in the Notes and the Indenture.

Thus, the Original Proof of Claim sought all amounts due under the Indenture and the Notes including unliquidated and contingent claims, such as claims for liquidated damages, redemption premiums, and compensatory damages. The claim for damages which the Debtors now oppose was plainly incorporated in the Original Proof of Claim.

12. Moreover, the Original Proof of Claim explicitly states that "all provisions of the Notes and the Indenture are expressly incorporated herein by reference." The Indenture codifies the 4.75% Noteholders' rights of conversion in Article 10. All claims related to breach of the bargained-for conversion rights granted by the Indenture were asserted in the Original Proof of Claim.

13. The Original Proof of Claim contains an inquiry notice providing: "This Proof of Claim serves, and is intended to serve, as notice of a claim for any amount due or to become due under the Notes or the Indenture, the provisions each of which are expressly incorporated herein by reference, whether or not summarized or identified specifically in this Proof of Claim, and all interested parties are on notice of, and advised to examine the provisions of, the Notes and the Indenture." Therefore, the Original Proof of Claim unequivocally encompasses the 4.75% Noteholders' claims for breach of contract related to the Noteholders' dashed expectations as to the exercise of their Conversion Right.

14. The Original Proof of Claim also contains an explicit "Reservation of Rights:"

>HSBC does not waive, and expressly reserves, all rights and remedies at law or in equity that HSBC, individually or as Indenture Trustee (including the Predecessor Indenture Trustee), has or may have against the Company and/or any of the

>Company's affiliates and subsidiaries, or any other person or entity, including, without limitation, rights against the holders of the Notes (the "Noteholders"). HSBC reserves the right to amend or supplement this claim at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail regarding the claims set forth herein, or to fix the amount of any contingent or unliquidated claim.

To the extent the Debtor argues that HSBC has enunciated a new claim, HSBC explicitly reserved the right to seek all remedies at law or in equity.

### B. In the Alternative, HSBC's Supplement Relates Back to the Original Proof of Claim

15. Even if construed as a new claim, the Supplement is still timely because it relates back to the Original Proof of Claim and does not prejudice the Debtor. The Supplement is a permissible and proper amendment to the timely filed proofs of claims because it simply describes the original claim with greater particularity. "A proof of claim can be amended at any time so long as the amendment relates back to the original claim and there is no prejudice to the Debtor." *Rivera v. United States (In re Rivera)*, 345 B.R. 229 (Bankr. D. Cal. 2005).

16. Creditors may file amendments to proofs of claims after the expiration of the claims bar date. An amendment to a proof of claim will relate back and be effective as of the date of the original proof of claim. *In re Tessier*, 333 B.R. 174, 176 (Bankr. D.Conn. 2005). Amendments to a proof of claim are liberally allowed. *Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005) (*citing In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)). The decision to allow a creditor to amend a claim is within the sound discretion of the bankruptcy judge. For timeliness purposes, an amended proof of claim relates back to the date the original proof of claim was filed.

17.   This Court applies a two-step analysis when determining whether or not to allow a post-Bar Date amendment to an original proof of claim. Initially, "the court must examine whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *In re Spiegel, Inc.*, 337 B.R. 816, 820 (Bankr. S.D.N.Y. 2006). HSBC's Original Proof of Claim timely asserted a claim for unliquidated damages and stated without equivocation its intention to hold the Debtors liable for all contractual breaches.

18.   This Court's step one examination requires a determination of whether the amendment "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* As discussed above, HSBC's Supplement described the original claim with greater particularity. The Original Proof of Claim specifically claimed damages for breach of any right codified in the Indenture and the Notes and delineated a broad range of unliquidated damages, including breach of the 4.75% Noteholders' Conversion Right. As stated in the Supplement, HSBC sought to provide "more detail regarding the unliquidated claims asserted in Paragraph 2(d) with respect to the 4.75% Notes. All of the claims described herein arise from and relate to the 4.75% Notes and arise under the Indenture or from a breach thereof, and were subsumed and included within the Original Proof of Claim." (Supplement, at p. 2, n. 1.) Thus, the Supplement relates back to the Original Proof of Claim. The Debtors cannot articulate any plausible reading of the Original Proof of Claim that omits HSBC's claim for damages for breach of the 4.75% Noteholders' Conversion Right.

19.   After the Court determines that the amendment relates back to the timely filed Original Proof of Claim, the Court must "determine whether it would be equitable to allow the

amendment." *In re Spiegel, Inc.*, 337 B.R. 816, 820 (Bankr. S.D.N.Y. 2006). Equity dictates that HSBC's Conversion Right claim be allowed.

20. There can be no prejudice to the Debtors from allowing HSBC's claim because the Debtors have just adjourned the hearing on the Disclosure Statement for 6 weeks and are considering new options for the Plan. Moreover, the Debtors have been discussing the Conversion Right with holders for months. On this point, HSBC adopts and incorporates, on behalf of the 4.75% Noteholders, the arguments advanced by the 6% Noteholders in their response at Point II(B)(2), as to why equity demands the Court consider the supplemental claims.

**II.** **Debtors are Liable to the 4.75% Noteholders for Breach of the Conversion Right**

21. This Court's ruling in *In re Calpine Corp.* is the law of the case and supports the 4.75% Noteholder's claim for damages.[5] *In re Calpine Corp.*, Case No. 05-60200 (BRL), 2007 Bankr. LEXIS 645 (Bankr. S.D.N.Y. March 5, 2007) (the "CalGen Decision"). There, the CalGen Secured Lenders sought to recover damages for the Debtors' prepayment of the debt in violation of a no-call provision. The Debtors argued that the CalGen Secured Lenders were not entitled to any recovery, because the no-call provision was unenforceable due to the bankruptcy. The Court disagreed, holding that the Debtors' "preclusive argument for a total foreclosure of any damage recovery is incorrect." *Id.* at *17. The Court recognized that the "CalGen Secured Lenders' expectation of an uninterrupted payment stream has been dashed giving rise to damages." *Id. See Harsco Corp v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). The Court concluded

---

[5] The law of the case is a doctrine which prevents parties from re-litigating issues which have already been decided by the Court. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964), *cert. denied*, 377 U.S. 934 (1964). Thus, "where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Manhattan Investment Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006) (citations omitted); *see also In re Ski Train Fire*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (holding that a court's discretion to revisit a non-final ruling is "limited by the law of the case doctrine").

that "while the agreements do not provide a premium or liquidated damages for repayment during the period the Debtors propose, the CalGen Secured Lenders still have an unsecured claim for damages for the Debtors' breach of the agreements." *Id.* at *18.

22. Likewise, here, the 4.75% Noteholders are entitled to damages as compensation for their dashed expectations resulting from the denial of their Conversion Right. The 4.75% Notes explicitly provide that the Noteholders are entitled to exercise their rights of conversion. The Debtors, however, seek to prepay the Notes without compensating the Noteholders for their Conversion Right – in violation of the express contractual provisions – and thus avoid any claim for damages. As this Court already held, the Debtors cannot avoid paying damages for its breach of the contractual obligations under the Indenture. Indeed, such a result would "be the opposite of equity" and would deny the unsecured creditors their "pre-petition rights." *See In re 139-141 Owners Corp.*, 306 B.R. 763, 771 (Bankr. S.D.N.Y. 2004); *In re Dow Corning Corp.*, 456 F. 3d 668, 679 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 1874 (2007) (holding that "unsecured creditors may recover their attorneys' fees, costs and expenses from the estate of a solvent debtor where they are permitted to do so by the terms of their contract and applicable non-bankruptcy law").

23. The Debtors' attempt to distinguish the CalGen Decision is unavailing. While the Debtors impose upon the decision a highly restrictive reading, the Court's ruling is not so narrow and certainly encompasses the contractual conversion rights that HSBC seeks to vindicate here on behalf of the 4.75% Noteholders. The Court's directive was not limited to makewhole arguments, but rather was grounded in a sound rationale that a creditor is entitled to damages for breaches of contract that dash its expectation, whether the expectation be a violation of prepayment provision or an option to exercise conversion rights.

24. Moreover, in bankruptcy cases involving solvent debtors, it is "the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act." *In re 139-141 Owners Corp.*, 306 B.R. 763, 771 (Bankr. S.D.N.Y. 2004) (citing *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959), *cert. denied*, 361 U.S. 947 (1960); *Citibank N.A. v. Nyland (CF8) Ltd.*, 878 F.2d 620, 625 (2d Cir. 1989) ("no decision of this Court or any New York court has impaired the vitality of *Ruskin*"). Because the Debtors are solvent and the value of the assets are sufficient to pay all the creditors in full, it is the Court's duty to award damages for their breach of the 4.75% Noteholders' Indenture.

25. The Debtors also reargue the proposition that the acceleration of the debt renders the Conversion Right unenforceable and, therefore, prevents any claim for breach of contract. (Debtors' Limited Objection at 20–21.) This argument was already rejected by this Court in the CalGen Decision, as explained above, and must therefore be disregarded. HSBC adopts and incorporates, on behalf of the 4.75% Noteholders, the arguments advanced by the 6% Noteholders in their response, at Part I(B), explaining why acceleration does not terminate the Conversion Right or deny the Noteholders compensation for damages.

26. Putting aside the CalGen Decision, governing law and the Indenture itself demand vindication of the 4.75% Noteholders' Conversion Right. HSBC has enunciated a viable breach of contract claim. The 4.75% Noteholders had expectations of realizing the benefits of the conversion rights bargained-for and codified in the Indenture. The Conversion Right, allowing the 4.75% Noteholders to convert the debt to cash and stock, was a crucial part of the consideration for the contractual agreement between the parties. Article 10 of the Indenture provides that a "Holder of a Note may convert such Note into cash and Common Stock."

(Indenture, Article 10, at p. 58.) This right continued even after the occurrence of an Event of Default. See § 10.01(d):

> If an Event of Default, as described under Section 6.01 of this Indenture has occurred and is continuing (other than a Default in a cash payment upon conversion of the Notes), the Company may not pay cash upon conversion of any Notes (other than cash in lieu of fractional shares) and instead will make payment only through the delivery of shares of Common Stock. The number of shares of Common Stock to be delivered will be equal to (A) the aggregate principal amount of Notes to be converted divided by 1,000 multiplied by (B) the Conversion Rate.

Section 6.01(8) provides that the filing of a case in bankruptcy is an Event of Default. The contractual provisions granting the Conversion Right were provided in return for the extension of credit to the Debtor evidenced by the 4.75% Notes.

27.     The Debtors were barred from eliminating the conversion rights of the 4.75% Noteholders. Section 6.03 of the Indenture provides that the Trustee may pursue all remedies to vindicate its holders' interests: "If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes of this Indenture." (Section 6.03, Indenture, at p. 45.)[6]

28.     Where there is no codified exception in the Bankruptcy Code, the "'basic federal rule' in bankruptcy is that state law governs the substance of claims" since "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) (*citing and*

---

[6]   Moreover, Section 3.07 prohibits the Debtors from redeeming the Notes prior to November 22, 2009. Thus, before that date, the Notes were not callable. The Debtors' plan to repay the Notes prior to that date is therefore also a breach of contract which, under the CalGen Decision, entitles the Noteholders to damages.

quoting *Butner v. United States*, 440 U.S. 48, 55, 57 (1979). New York law governs the 4.75% Noteholders' breach of contract claim against the Debtors. (Section 12.08, Indenture, at p. 72.) The elements of a breach of contract claims are: an enforceable agreement, performance of the agreement by the aggrieved, the defendant's failure to perform in accordance with the terms of the agreement, and damages resulting from this failure to perform. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Here, the 4.75% Noteholders and the Debtors are parties to the enforceable Indenture, the Noteholders have performed, the Debtors have proposed a repayment of the debt in violation of their contractual obligations in accordance with the Indenture, and this non-performance will give rise to substantial damages. Under New York law, HSBC has articulated a viable breach of contract claim.

29. HSBC adopts and incorporates, on behalf of the 4.75% Noteholders, the arguments advanced by the 6% Noteholders in their response, at Part I(A) and (C), setting forth the law demonstrating the entitlement to damages for the Debtors' breach of the conversion right.

## JOINDER

30. HSBC, as indenture trustee for the 6% Notes, respectfully submits that the Debtors' Objection should be rejected as to the 6% Notes for the reasons set forth in the Response of the 6% Convertible Noteholders. To that end, HSBC hereby joins in the Response of the 6% Convertible Noteholders and adopts and incorporates the arguments advanced therein.

## WAIVER OF MEMORANDUM OF LAW

31.     Because this Response sets forth the authorities relied upon herein, HSBC respectfully submits that the Response itself satisfies the requirements of Local Bankruptcy Rule 9013-1(b) regarding submission of a memorandum of law. HSBC reserves the right to (1) supplement this Response before the hearing, and (2) file a separate memorandum of law in further support of this Response or in response to any objection to this Response.

## CONCLUSION

For the foregoing reasons, HSBC respectfully requests that this Court reject the Debtors' Limited Objection and allow HSBC's claims for breach of contract damages for breach of the 4.75% and 6% Convertible Noteholders' Conversion Rights, together with such other and further relief as the Court deems just and proper.

Date: July 30, 2007

KELLEY DRYE & WARREN LLP

/s/ Jennifer A. Christian
Sarah L. Reid (SR-4603)
David E. Retter (DR-4014)
Damon W. Suden (DS-8384)
Jennifer A. Christian (JC-7305)
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

ATTORNEYS FOR HSBC BANK USA,
N.A., AS INDENTURE TRUSTEE