# **EXHIBIT R**

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-60200-brl

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  CALPINE CORPORATION,

9

10        Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              August 8, 2007

19              10:55 AM

20

21  B E F O R E:

22  HON. BURTON E. LIFLAND

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2    HEARING re Debtors' Motion for an Order, Pursuant to 11 U.S.C.

3    Section 363(b) and Rule 9019 of the Federal Rules of Bankruptcy

4    Procedures Approving Settlement Agreement Among Pacific Gas and

5    Electric Company, Delta Energy Center, LLC and Los Medanos

6    Energy Center, LLC

7

8    HEARING re Motion (a) to Authorize the Debtors to Assume

9    Certain Leases and Executory Contracts Relating to the Debtors'

10    Gilroy Facility; (b) Approving Certain Amendments Thereto; and

11    (c) Granting Related Relief

12

13    HEARING re Motion to Approve Settlement Agreement Between the

14    Debtors and Turlock Irrigation District

15

16    HEARING re Debtors' Motion for Authorization to Enter into

17    Stipulation with Second Lien Committee and Wilmington Trust

18    Company, as Indenture Trustee

19

20    HEARING re Debtors' Third Omnibus Objection to Proofs of Claim

21    (Beneficial Certificate Holder Claims Related to

22    Rumford/Tiverton Financing, Beneficial Noteholder Claims,

23    Equity Interest Claims, Hybrid Equity Interest/Beneficial

24    Noteholder Claims and Unspecified Equity Interest/Beneficial

25    Noteholder Claims)

3

1

2    HEARING re Debtors' Twelfth Omnibus Objection to Proofs of

3    Claim (Amended/Replaced Claims, No Liability Claims,

4    Duplicative Claims, Claims to be Adjusted, Wrong Debtor Claims

5    to be Adjusted, Claims Filed by the Fireman's Fund Insurance

6    Company and PSM Management Claims)

7

8    HEARING re Debtors' Thirteenth Omnibus Objection to Proofs of

9    Claim (No Liability Claims, Anticipatory Claims, Assumed

10   Contract Claims, Amended/Replaced Claims, Unliquidated Claims,

11   Claims to be Adjusted and Wrong Debtor Claims to be Adjusted)

12

13   HEARING re Debtors' Sixteenth Omnibus Objection to Proofs of

14   Claim (Claims to be Adjusted, Wrong Debtor Claims to be

15   Adjusted, Duplicative Claims, Anticipatory Claims, No Liability

16   Claims, Amended/Replaced Claims, Unliquidated Claims and

17   Assumed Contract Claims)

18

19   HEARING re Debtors' Seventeenth Omnibus Objection to Proofs of

20   Claim (Claims to be Adjusted, Wrong Debtor Claims to be

21   Adjusted, Amended/Replaced Claims and No Liability Claims)

22

23   HEARING re Debtors' Limited Objection to Convertible Noteholder

24   Claims

25

4

1

2  HEARING re Adversary Proceeding 1-07-01760, Calpine Corporation

3  v. Rosetta Resources, Pre-Trial Conference

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Lisa Bar-Leib

5

1

2    A P P E A R A N C E S :

3    KIRKLAND & ELLIS LLP

4          Attorneys for Calpine Corporation

5          153 East 53rd Street

6          New York, NY 10022

7

8    BY:    RICHARD M. CIERI, ESQ.

9          HELEN HUANG, ESQ.

10

11   KIRKLAND & ELLIS LLP

12          Attorneys for Calpine Corporation

13          200 East Randolph Drive

14          Chicago, IL 60601

15

16   BY:    DAVID R. SELIGMAN, ESQ.

17          MARK KIESELSTEIN, ESQ.

18          ANDREW R. MCGAAN, ESQ.

19

20

21

22

23

24

25

6

```
 1

 2    AKIN GUMP STRAUSS HAUER & FELD LLP

 3          Attorneys for Creditors' Committee

 4          590 Madison Avenue

 5          New York, NY 10022

 6

 7    BY:    MICHAEL S. STAMER, ESQ.

 8           LISA G. BECKERMAN, ESQ.

 9

10    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

11          Attorneys for Official Committee of Equity

12           Security Holders

13          One New York Plaza

14          New York, NY 10004

15

16    BY:    GARY KAPLAN, ESQ.

17           ADRIAN E. FELDMAN, ESQ.

18

19    MILBANK, TWEED, HADLEY & MCCLOY LLP

20          Attorneys for Individual 6% Noteholders

21          One Chase Manhattan Plaza

22          New York, NY 10005

23

24    BY:    DENNIS F. DUNNE, ESQ.

25           MATTHEW S. BARR, ESQ.
```

7

1

2  STROCK & STROCK & LAVAN LLP

3      Attorneys for 7.75% Convertible Noteholders

4      180 Maiden Lane

5      New York, NY 10038

6

7  BY:   KRIS HANSEN, ESQ.

8        EREZ GILAD, ESQ.

9

10  YOUNG CONAWAY STARGATT & TAYLOR, LLP

11      Attorneys for M&T, as Indenture Trustee

12      The Brandywine Building

13      1000 West Street

14      17th Floor

15      Wilmington, DE 19801

16

17  BY:   IAN S. FREDERICKS, ESQ.

18

19  KELLEY DRYE & WARREN LLP

20      Attorneys for HSBC Bank USA, N.A.

21      101 Park Avenue

22      New York, NY 10178

23

24  BY:   SARAH L. REID, ESQ.

25        JENNIFER A. CHRISTIAN, ESQ.

8

```
 1
 2   NIXON PEABODY LLP
 3          100 Summer Street
 4          Boston, MA 02110
 5
 6   BY:   JOHN V. SNELLINGS, ESQ.
 7
 8   CADWALADER, WICKERSHAM & TAFT LLP
 9          Attorneys for Rosetta Resources
10          One World Financial Center
11          New York, NY 10281
12
13   BY:   JOHN H. BAE, ESQ.
14
15   MAYER, BROWN, ROWE & MAW LLP
16          Attorneys for Rosetta Resources
17          700 Louisiana Street
18          Suite 3400
19          Houston, TX 77002
20
21   BY:   CHARLES S. KELLEY, ESQ.
22
23
24
25
```

9

1

2    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3          Attorneys for Unofficial Committee of Second Lien

4          1285 Avenue of the Americas

5          New York, NY 10019

6

7    BY:    ELIZABETH R. MCCOLM, ESQ.

8           ANDREW N. ROSENBERG, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

93



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

THE COURT:  Very well.  I guess, you're waiting to hear from me.  Calpine and it's affiliated debtors seek the entry of an order granting the debtors' limited objection pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 to claims filed by the holders of certain unsecured convertible debt.  The noteholders for that convertible debt

94

1    object.

2           Between 2000 and 2005 Calpine issue four series of

3    unsecured convertible notes.  As of the commencement of these

4    Chapter 11 cases on December 20, 2005, the petition date,

5    convertible notes were outstanding in the aggregate principal

6    amount of approximately 1.8 billion dollars and consisted of

7    approximately 1.3 million dollars four percent convertible

8    senior notes due December 26, 2006, 547 million dollars six

9    percent contingent convertible senior notes due 2014, six

10   hundred and fifty million dollars 7.75 contingent convertible

11   senior notes due 2015 and 634 million dollars 4.75 contingent

12   convertible senior notes due 2023.

13          Generally, the convertible note indentures provide

14   that prior to maturity the holders may convert the notes into

15   cash and/or common stock.  Upon the occurrence of one of a

16   number of conditions precedent.  As long as no event of default

17   has occurred and provided one of the conversion conditions has

18   transpired converting holders of the 4.75, the six percent and

19   the 7.75 percent notes are entitled to receive (a) repayment of

20   principal in cash and (b) payment of any upside different

21   between the applicable conversion price and Calpine stock price

22   in shares of Calpine common stock.  Whereupon conversion the

23   stock price is lower than the strike price the holders are not

24   entitled to full repayment of the principal and may only

25   receive their conversion value in cash.  The indentures provide

95

1  that commencing a Chapter 11 case constitutes an event of

2  default.  Upon an event of default all notes shall be

3  "immediately due and payable" without any further action or

4  notice by the trustee or holders.  The debtors filing their

5  Chapter 11 cases constituted an event of default under the

6  notes indentures thus rendering the notes due and payable

7  immediately.  None of the conversion conditions were satisfied

8  on the petition date.  By order dated April 26, 2006 this Court

9  established August 1, 2006 as the bar date for filing proofs of

10  claim.

11       On or about July 19, 2006 Wilmington Trust Company,

12  as indentured trustee for the 7.5 percent notes, filed a proof

13  of claim asserting claims for (a) principal and interest and

14  (b) other unliquidated charges.  On or about July 27, 2006 HSBC

15  Bank, as successor indentured trustee for the four percent

16  notes, the six percent notes and the 4.75 percent notes filed

17  two proofs of claim asserting similar claims including "other

18  unliquidated amounts."  In connection with the four percent

19  notes and the six percent notes and the 4.75 percent notes no

20  mention was made in the original proofs of claim of any claim

21  by virtue of any loss of a conversion right.

22       On January 5, 2007 the debtors and HSBC entered into

23  a stipulation and order whereby the Court approved on January

24  30th pursuant to which the parties stipulated to allow claims

25  amounts for the principal and pre-petition accrued interest due

96

1    on account of inter alia each of the four percent notes, the

2    six percent notes and the 4.75 percent notes.  The parties

3    reserve for a later date the determination of the appropriate

4    rate of post-petition interest.  On March, April and May of

5    2007 the indentured trustees for the convertible notes filed

6    "supplemental" proofs of claims seeking in addition to

7    repayment of outstanding principal and accrued interest damages

8    for "any breach" of the conversion rights, collectively the new

9    claims.

10            On June 20, 2007 the debtors filed their plan and

11    disclosure statement and under the most likely scenario with

12    midpoint valuation and midpoint claims the debtors proposed to

13    pay the noteholders the full amount of their principal and

14    accrued interest as well as post-petition interest thereon at a

15    rate to be determined by the Court together with reasonable

16    pre-petition indentured trustees fees as provided for under the

17    indentures pursuant to the plan.

18            The debtors object to the new claims first on the

19    basis that they were not timely filed.  To the extent this

20    Court allows the noteholders to pursue their new claims the

21    debtors would also object to the new claims to the extent they

22    seek payment beyond principal and interest.  The official

23    committee of unsecured creditors and the official committee of

24    equity holders join in the debtors' objection to the new

25    claims.  Are the new claims timely or untimely?  The

97

1    noteholders filed their new claims approximately eight months

2    after the bar date without first seeking Court approval.  The

3    noteholders argue that the new claims are not new claims but

4    rather amendments to the noteholders original claims, I

5    disagree.  First, the new claims are not amendments because

6    they do not relate back to the original claims.  A claim

7    relates back to a timely filed claim if it "(1) corrects a

8    defect of form in the original claim, (2) describes the

9    original claim with greater particularity or (3) pleads a new

10   theory of recovery on the facts set forth in the original

11   claim."  See Midland Cogeneration Venture Limited v. In re

12   Enron, 419 F.3d 115, 133, (2d Cir. 2005), U.S. v. Kolstadt, 928

13   Fed 2d 171, 175, (5th Cir. 1991), "amendments to do not vitiate

14   the role of bar dates.  Indeed, courts that authorize

15   amendments must ensure that corrections or adjustments do not

16   set off wholly new grounds of liability.  Courts must subject

17   post bar date amendments to careful scrutiny to assure that

18   there was no attempt to file a new claim under the guise of

19   amendment," In re Enron Corp., 419 F.3d at 133, citing In re

20   Integrated Resources, 157 B.R. 66 and 70 (S.D.N.Y. 1993).  "A

21   claimant asserting relation back bears the burden of proof," In

22   re Enron Creditors Recovery Corp., 2007 W.L. 175, 653 at 5,

23   (Bankr. New York June 13, 2007.)  No application was ever made

24   to this Court to bring before this Court the opportunity to

25   pass on these amendments or alleged amendments.

98

1          Here the new claims do not correct a form defect in

2     the original claims, they do not describe the original claims

3     with more particularity and they do not plead a new theory of

4     recovery on the facts set forth in the original claims.

5     Instead they assert entirely new claims seeking in addition to

6     100 percent of the principal and interest due under the notes a

7     double recovery based on conversion rights, See Ameritrust Co.

8     v. Integrated Resources, 157 B.R. 66, 72 (S.D.N.Y. 1993), "The

9     record contains evidence that the appellee's banks amended

10    proofs of claims seek no interest in the amount of priority in

11    the bank's original claims.  This factor alone goes to support

12    three of the five factors that need to be considered when

13    balancing the equities."

14         Moreover the initial claims did not make any

15    meaningful reference to the conversion claims, See Enron 419

16    F.3d at 143, whereas the Court must determine "whether there

17    was a timely assertion of a similar claim or demand evidencing

18    an intention to hold the estate liable."  In Re Asia Global

19    Crossing Ltd., 324 B.R. 503, 508, 509, (Bankr. S.D.N.Y. 2005)

20    disallowing late amended claims because among other things the

21    initial claim asserted only a general damage claim and did not

22    provide notice of an amended claim.  Although the noteholders

23    have not quantified the new claims the debtors have been led to

24    believe that the amounts claimed could be in the hundreds of

25    millions of dollars.  In addition, the noteholders waited

99

1    nearly eight and in some cases ten months after the bar date to

2    file the new claims which to the extent they are cognizable at

3    all existed on the petition date.  See Enron 419 F.3d at 128,

4    "in determining how long is too long, Courts generally consider

5    the degree to which in the context of a particular proceeding

6    the delay may disrupt the judicial determination of the case."

7    The noteholders offer no excuse for this delay which has

8    disrupted the judicial administration of the case in multiple

9    ways.  First, the noteholders filed the new claims doing the

10   debtors' formulation of the plan and second, the timing of the

11   new claims forces the debtors to deal with them when they

12   should be focusing on the approval of the disclosure statement

13   and confirmation of the plan.  See Enron 419 F.3d at 122 citing

14   Silivanch v. Celebrity Cruises, Inc., 333 F.3d, 355, 368 (2d

15   Cir. 2003), "we and other circuits have focused on the third

16   factor the reason for the delay including whether it was within

17   the reasonable control of the movant."

18          In addition, as already noted the noteholders have

19   led the parties to believe without specifically setting it

20   forth that the amount sought under the new claims would be

21   substantial and in the hundreds of millions of dollars.  Indeed

22   they concede that the claim or claims are elephantine in size.

23   To the extent the new claims remain unresolved and unliquidated

24   as of confirmation the reorganized debtors may have to maintain

25   large reserves thereby delaying distributions to other

100

1    stakeholders who've timely filed proofs of claims and interest.

2    In addition to being time barred the new claims are without

3    merit.  A convertible debenture is an indivisible unit.  The

4    issuer has but one obligation to meet either redemption or

5    conversion, it can never be required to do both.  See Chock

6    Full O'Nuts v. U.S., 453 F.2d, 300 (2d Cir. 1971), likewise

7    the convertible notes debentures do not provide for recovery on

8    account of both debt and equity interest.  Instead like all

9    convertible debentures the convertible notes provide the

10   security of a debt instrument but allow the noteholders to

11   benefit from any future upside by converting their notes to

12   cash and common stock.  Once the noteholders have converted

13   their notes, however, they no longer hold debt interest to the

14   notes that have been converted.  Accordingly, the convertible

15   noteholders cannot possibly be entitled to receive payment of

16   their debt and damages on the account of a conversion right.

17   See 11 U.S.C. 1129(B)(1)(b).  See also Chock Full O'Nuts, 453

18   F.2d at 304, "convertible debentures provide for two mutually

19   modes of satisfaction."  By repaying the noteholders principal

20   accrued interest in full the debtors are rendering the

21   alternative performance as provided in the indenture.  See

22   Chock Full O'Nuts, 453 F.2d at 304, "the alternative to

23   conversion is that the issuer will redeem the debenture or pay

24   it at maturity.  In which event the conversion privilege will

25   be terminated."  Moreover, the conversion rights were not

101

1    exercisable as of the petition date when the notes were

2    accelerated and matured.  And thus the noteholders do not have

3    allowable claims with respect to the conversion rights, See 11

4    U.S.C. 502(b), a claim filed against the estate must be

5    determined "as of the date of the filing of the petition."  In

6    re Einstein Noah Bagel Corp., 257 B.R. 499, 507 (Bankr.

7    District of Arizona 2000.)  At the time the case was filed the

8    right to receive cash would not have yet matured because the

9    put right itself had not yet become exercisable.

10          Lastly, even if the new claimants were cognizable

11   they would be susceptible to subordination pursuant to Section

12   510(b) of the bankruptcy code as claims arising from the

13   purchase or sale of a security if the debtors.  See Rembroe v.

14   Dufrain, In re Med Diversified Inc., 461 F.3d 251, 259 (2d Cir.

15   2006), "because of the binding agreement between the parties to

16   turn a debt into an equity interest it is reasonably clear that

17   Rembroe's claims was in line with policy concerns underlying

18   Section 510(b)"  See in Re Enron Corp., 341 B.R. 141, 162-63

19   (Bankr. S.D.N.Y. 2006) "dealing with subordinating claims

20   arising from ownership of employee stock options and concluding

21   that the broad application of Section 510(b) is now quite

22   settled." In re BT1 Communications, 304 B.R. 601, 608 (Bankr.

23   E.D.N.Y. 2004), "holding nothing in Section 510(b)'s text

24   requires a subordinated claimant to be a shareholder."

25          In conclusion, for the reasons just set forth the new

102

1    claims were filed after the bar date and accordingly are time

2    barred.  Even were the new claims were to be allowed as timely

3    amendments the claims for damages on account of the conversion

4    rights under the indentures would be disallowed or at best

5    subordinated.  The four percent notes have already expired by

6    their turns and could not be entitled to conversion right

7    damages under any theory.  Accordingly, the debtors' limited

8    objection to the new claims is granted.  Settle an order

9    consistent with this decision.

10           MR. KIESELSTEIN:  Thank you, Your Honor.  I've given

11   counsel's comments regarding the order.  We'll puddle and

12   submit and order to Your Honor as soon as possible.

13           THE COURT:  Very well.  Do you have anything else?

14           MR. SELIGMAN:  Your Honor, the only matter that we

15   have left on the agenda was an initial conference with respect

16   to the Rosetta adversary.  We would like to take that up in a

17   chambers conference.

18           THE COURT:  Sure.  We'll do it in chambers after the

19   call.

20           MR. SELIGMAN:  Thank you, Your Honor.

21           (Whereupon these proceedings were concluded at 1:21

22   p.m.)

23

24

25

103

1

2                              I N D E X

3

4                            R U L I N G S

5    DESCRIPTION                                    PAGE      LINE

6    Debtors' motion approving settlement agreement  19        24

7    among PG&E, Delta Energy Center, LLC and Los

8    Medanos, LLC approved

9

10   Motion to authorize debtors to assume          21        4

11   certain leases and contracts re Gilroy

12   Facility approved

13

14   Motion to approve settlement agreement         22        2

15   between debtors and Turlock Irrigation

16   District approved

17

18   Debtors' motion for authorization to enter     43        8

19   into stipulation with Second Lien Committee

20   and Wilmington Trust granted

21

22   Matters 5 through 10 on the agenda approved in  44        22

23   accordance with status report

24

25

104

I N D E X, cont'd


R U L I N G S

DESCRIPTION                                          PAGE        LINE


Debtors' limited objection to convertible           102         10
noteholder claim granted

105

1

2                              C E R T I F I C A T I O N

3

4       I, Lisa Bar-Leib, court-approved transcriber, certify that the

5       foregoing is a correct transcript from the official electronic

6       sound recording of the proceedings in the above-entitled

7       matter.

8
        Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                          DN: cn=Lisa Bar-Leib, c=US
9       _____ Reason: I am the author of this document
                          Date: 2007.08.10 11:14:39 -04'00'    August 10, 2007

10      Signature of Transcriber              Date

11

12      Lisa Bar-Leib

13      typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25